**From:** **Robert Sadowski** rsadowski@sadowskikatz.com
**Subject:** Proposed response to B. Kukowski
**Date:** September 26, 2018 at 4:09 PM
**To:** Amro Ali amro.ali9@icloud.com



Barbara, Here are some counter points to the items you mentioned about Dr. Ali:

He graduated medical school in 1994 and passed the USMLE Step 1 and 2 with low scores in 1998.
**Response:**
NYMC-WMC was aware of Dr. Ali's scores when he left NYU.  He was asked to do research work for NYMC-WMC and publish as much as he could because NYMC-WMC was on probation for lack of academic activities according to Dr. Sharma.  With respect to his Board scores, that is but one historical part of his CV--the import of which is diminished by his 4 clinical fellowships and more than 20 publications, including obtaining funding from the glaucoma foundation.  His Board scores were well known, but he received an interview from NYMC and a position.  If his Board scores were truly an eliminating factor, then Dr. Ali has been misled during the almost three years that he continued to work for NYMC-WMC.

Completed his PGY 1 year in 2003--why didn't he continue/complet3e his residency training at Northshore LIJ?
**Response:**
Dr. Ali knew that one year of clinical experience is required to improve his chances to advance his career in ophthalmology.  After NorthShore LIJ, he worked a series of clinical fellowships in different areas and continued his research, which is a valuable contribution to his field.  These years of hard work and dedication to ophthalmology in the United States should be a credit to his professional development, enthusiasm, and genuine interest in the field.  By no means does his years of hard work discredit him in anyway.  As an aside, one cannot compare the candidate from Qatar, who after one year of surgery at Saini hospital in 2014-2015, he moved to Qatar--not his country of origin, which is Jordan, where he graduated from medical school.  Incidentally, Saini hospital, where this candidate worked, is a community hospital that has only some affiliation with John's Hopkins.

Had many, many years (15) to take and pass step 3, but did not until 2018.
**Response:**
According to FSMB, Step 3 is not a requirement to commence a residency, and it is not necessary to take and pass Step 3 except to obtain the final unrestricted license.  Moreover, obtaining an unrestricted license is not feasible for Dr. Ali because an unrestricted license requires formal residency training in the United States.  Most importantly according to WMC contract page 40, successful completion of Step 3 is required during the second year of residency.  Upon information and belief, no program in the country requires an applicant for residency to pass step 3 to commence a residency.

His non-accredited fellowships were in subspecialty areas of ophthalmology--they do not count towards toward certification and did not teach or re-enforce his general medical knowledge or knowledge of general ophthalmology.

**Response:**
This is a complete misunderstanding. All fellowships in ophthalmology are non-accredited because no board examination is required except surgical retina and oculplastic--even medical retina is non-accredited. *See AUPO and American Board of Opthalmology.* Also, the chairman fellowship in pediatrics and program director fellowship in glaucoma are both non-accredited fellowships. The non-accredited fellowships were clinical fellowships, where Dr. Ali was treating patients. *See* Drs. Wandel and Sharma letters as well as from his mentors who expressed in recommendations letters Dr. Ali's bedside manner and patient feedback.

His volunteer research was for NYMC, **not** WMC.  He did not treat patients at WMC.
**Response:**  Dr. Ali worked for the ophthalmology department under NYMC and WMC, and specifically applied for IRB at WMC.  WMC runs the residency program but the credit for the work on more than 10 publications, grants application, and IRB has the Program Director's name on it--although the work was entirely done by Dr. Ali.

He was in the lower third of the approximately 40 candidates for the San Francisco Match in 2016, for which there were only 2 or 3 slots at WMC.  Obviously, he did not match with any other programs, probably for all of the objective reasons he did not match at WMC.
**Response:**  According the Program Director during a meeting held on July 21, 2018, Dr. Ali was in the lower half of the patch and the Director attributed that to a resident's one-time statement that Dr. Ali could be too old and slow for the job.  Indeed, Dr. Ali was asked many times if he can wake up early if he is on call.  Dr. Ali would like to see the records of his rank and the evaluation.  Dr. Ali interviewed with two professors Dr. Gerald Zaidman, who was impressed with Dr. Ali and his work.  Dr. Zaidman told Dr. Ali that if you can manage three children, you can manage a residency very easily.  Dr. Davae, a pediatric ophthalmologist at Metropolitan with whom he worked was very excited and happy to have him on board.
As to the comment from the resident, who worked with Dr. Ali for a year, he told Dr. Ali that Dr. Ali had his full support.

Passing the USMLE Step 3 was a condition to being considered for the off-match slot that opened in 2017 because he was many years removed from medical school and his PGY 1 general medical education, and had zero years of general ophthalmology training.  Step 3 passage was required of Dr. Ali to address concerns that the passage of time had eroded the basic clinical knowledge required of PGY 2 residents and for patient safety reasons.  It had nothing to do with his being an International Medical School graduate and would have been required of him if he had graduated from an American School given his unusually protracted training.  However, he failed the Step 3 while that slot was open.  He was not promised a residency slot if and when he passed Step 3.  That was a one-time opportunity.

**Response:**  Dr. Ali has much previous training in general ophthalmology, without

which he could not have obtained all of his fellowships in some of the best institutions in the country.  There is little possibility for any candidate to be accepted for an ophthalmology fellowship unless the candidate had outstanding levels of general ophthalmology training.  Moreover, all of his recommendation letters  speak highly of his knowledge and skills.
Failing Step 3 should not stigmatize Dr. Ali, Step 3 is an examination of basic and clinical knowledge of medicine, pediatrics, obstetrics, gynecology etc.   Dr. Ali's practice is in ophthalmology and he had to go back to study as a fourth year medical student, while working unpaid and working other jobs to support his family.  Moreover, why was that condition not put before Dr. Ali the first time he applied.
Dr. Wandel told Dr. Sharma and Dr. Ali that it is the policy for foreign medical graduates, according to Dr. Bierman, to have passed Step 3--this is the policy for foreign medical graduates.  This "policy" clearly contradicts the NYS Medical Board rule that step 3 is not required for commencing a residency.

Dr. Ali was asked to pass step 3 before the resident dropped her position and when he was offered an interview.
**Response:**  Dr. Ali first applied in November 2015, one year before the match, for an advanced position of PGY 3 and his board scores and application was well known since that time.  So one can conclude that he was misled to keep him working for free, if as WMC, now claims, he's unqualified.  Dr. Wandel's stated plan for Dr. Ali was that Dr. Ali would start on July 1, 2018, in a spot outside the match, but this plan inexplicably changed when the resident dropped her position.

Dr. Ali does not compare favorably to the resident from Qatar.  That resident has superior credentials, i.e. coming off an NIH grant at John's Hopkins, had impressive Step 1 and 2 scores and passed step 3.

**Response:**  Regardless of the credentials of the candidate from Qatar, the position appears to have been specially created for him without formal interviews or postings, which is unfair to Dr. Ali and other candidates who could have applied for the position.  Indeed, Drs. Wandel and Sharma have not met or even spoken to the candidate at all.  In addition, according to our information this candidate just completed his internship in Sinai hospital--an affiliate of John's Hopkins when he left for Qatar.  Also, there is no mention of his name in NIH records.  Please provide the grant number and his role and publication.  Moreover, for an USA NIH grant, this resident would have to be in a full time faculty position in order to receive a real grant.  Also this candidate did not complete his formal training in Qatar and has no publications.  Dr. Ali in comparison has more than 20 publications, ten with Dr. Wandel's name.  Dr. Ali is one of the few recipients nationwide with a grant from the glaucoma foundation.  It is very clear, that Dr. Ali's CV--with all of his contributions in the field between training in general ophthalmology, 4 clinical fellowships, one grant, and 20 publications is a highly favorable candidate, and having been passed over in this regard is discriminatory.

Each of the institutions at which Dr. Ali did his non-accredited fellowships has an ophthalmology residency program.  I suspect he was not accepted in their programs either.  In Short, Dr. Ali is not a strong candidate for a highly competitive

programs either." In Short, Dr. Ali is not a strong candidate for a highly competitive residency program and WMC does not appear alone in that assessment.

**Response:** Dr. Ali worked successfully for highly prestigious institutions ranking in the top tier in ophthalmology, which unlike WMC have never been on probation. Dr. Ali has consistently improved his credentials and should clearly be given the residency at WMC. Dr. Ali's has worked for NYMC-WMC as a volunteer and advanced the prestige of the institution and the Chairman, for the institution to now shut him out is in a word despicable.

I look forward to speaking with you at your convenience on Friday. Rob


Robert W. Sadowski
Partner

**Sadowski Katz LLP / Attorneys at Law**
830 Third Avenue, 5 floor
New York, New York 10022
Phone: 646-503-5341
Fax: 646-503-5348
Email: rsadowski@sadowskikatz.com