# Sadowski Katz LLP

800 Third Avenue, 28th Floor
New York, New York 10022
Phone: 646-503-5341

Fax: 646-503-5348
rsadowski@sadowskikatz.com
rkatz@sadowskikatz.com

February 14, 2019

Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004
Attn: Director Kevin J. Berry

  Re: Dr. Amro Ali v. Westchester Medical Center and New York Medical College

Dear Director Berry:

  This firm represents Dr. Amro Ali in connection with his charge of discriminatory treatment based on national origin and age. Enclosed with the charging form is a copy of the proposed complaint Dr. Ali intends to file following exhaustion of this administrative remedy. We request that this matter be handled as expeditiously as possible.

  If you have any questions please feel free to contact me.

Sincerely,

Robert W. Sadowski

Cc: Dr. Amro Ali

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To:    Agency(ies) Charge No(s):
☐ FEPA
☒ EEOC

_____ and EEOC
State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Dr. Amro Ali | (347) 623-5406 | 08/01/1971 |

| Street Address | City, State and ZIP Code |
|---|---|
| 110-27 72nd Drive, Apt. 2 | Forest Hills, Queens, New York 11378 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Westchester Medical Center | unknown | (914) 594-4000 |

| Street Address | City, State and ZIP Code |
|---|---|
| 100 Woods Road | Valhalla, New York 10595 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| New York Medical College | unknown | (914) 493-7000 |

| Street Address | City, State and ZIP Code |
|---|---|
| 40 Sunshine Cottage Road | Valhalla, New York 10595 |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☒ NATIONAL ORIGIN
☐ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: May 2016
Latest: Ongoing

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Please see the attached complaint.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

2/14/19
Date

_____
Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

EEOC Form 5 (5/01)

| | |
|---|---|
| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:   Agency(ies) Charge No(s):<br>☐ FEPA<br>☒ EEOC |

_____ and EEOC
*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct.<br><br>_____   _____<br>   Date           *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

Robert W. Sadowski
Sadowski Katz LLP
800 3rd Avenue, 28th Floor
New York, New York 10022
Tel. No.: (646) 503-5341
rsadowski@sadowskikatz.com

*Attorneys for Plaintiff Amro Ali, M.D.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMRO ALI, M.D.,

    Plaintiff,

- against -

WESTCHESTER MEDICAL CENTER and
NEW YORK MEDICAL COLLEGE,

    Defendants.

---

**COMPLAINT**

**Civ. No.**

Plaintiff Dr. Amro Ali ("Dr. Ali" or "Plaintiff"), by and through his attorneys, Sadowski Katz LLP, alleges for his complaint as follows:

**PRELIMINARY STATEMENT AND NATURE OF THE ACTION**

This is a civil action brought by Plaintiff against Westchester Medical Center and New York Medical College ("WMC-NYMC" or "Defendants") for discriminatory treatment because of his nationality and age, who has been abused under the umbrella of "dream of residency." Plaintiff seeks injunctive and compensatory relief. Specifically, he seeks appointment to Defendants' residency program, which currently has an opening. Plaintiff also seeks compensatory damages for the years of work he provided to Defendants without pay.

1. Plaintiff has been in the United States of America for more than ten years and has been the subject of discriminatory treatment in many settings, however, for fear of the

consequences and potential retaliation he has been reluctant to voice his concerns and complain of the discriminatory treatment. However, finally, Dr. Ali has found the clinical management at WMC-NYMC destroying his career, reputation, livelihood, and family with its arrogant lies, misrepresentation, and discriminatory treatment.

2. Over the past three years Dr. Ali has been misled by false promises and discriminatory treatment in connection with his application for an ophthalmology residency. Specifically, Program Director, Dr. Thaddeus Wandel and Dr. Sansar Sharma informed him that the Director of Graduate Medical Education ("GME"), Dr. Fredrick Z. Bierman, is requiring Dr. Ali to pass the United States Medical Licensing Examination ("USMLE") step 3 before Dr. Ali may start a residency position because Dr. Ali is a foreign medical graduate.

3. Dr. Ali has discussed this issue with Dr. Wandel and Dr. Sharma on many occasions and both of them confirmed that Dr. Bierman directed that passing the step 3 USMLE is a condition that Dr. Ali must satisfy in order to be admitted to the residency program. This requirement is not imposed on American Medical Graduates. This disparate treatment of foreign medical graduates has been brought to the attention of the American Councils Graduate Medical Education ("ACGME"), who confirmed that this condition constitutes discriminatory harassment.

4. The Federal State Medical Board and New York State Medical Board also confirmed that USMLE step 3 is for qualifying for a state licensure and not required for commencing a residency program. Moreover, according to the WMC institute contract, "[E]very WMC-based categorical residency training program at WMC require trainees to pass Step 3 of the USMLE . . . examination sequence prior to the end of their second year of training." WMC Resident /Fellow Agreement, Terms of Appointment, Policies and Procedures 2016-17 at 40.

5. The Program Director, and Drs. Wandel and Sharma told Dr. Ali that WMC only accepts American graduates without passing the step 3 exam, but international medical graduates must pass step 3 before starting the residency program. In fact, counsel for the ACGME also confirmed that treating international medical graduates differently from American medical graduates is counter to the requirement of having policies that prevent harassment.

6. Dr. Ali has distinguished himself, and by doing "unpaid" work at WMC which greatly benefited the institution with the understanding that Dr. Ali's published research would advance the standing of WMC-NYMC and garner him a residency position. Indeed, prior to Dr. Ali publishing several works and obtaining grants for research, WMC-NYMC was sorely lacking in research publications, which adversely affected the prestige and academic standing of the institutions.

7. In October 2015, after finishing most of my residency at Alexandria University in Egypt, and four clinical fellowships in U.S. programs, and having been awarded a grant from the glaucoma foundation, he moved from New York University to WMC. At that time, Dr. Wandel expressed to Dr. Sharma and Dr. Ali that WMC needed to produce more research and publications and in exchange for Dr. Ali's research and publications, at which he excelled, he would obtain a residency position.

8. In December 2015, New York Medical College ("NYMC") hired Dr. Ali full-time as clinical instructor in the Department of Ophthalmology, which is operated by NYMC and WMC, and which allowed him to submit grant proposals and many Institutional Review Board ("IRB") studies from the Department of Ophthalmology. For this work Dr. Ali was unpaid. Dr. Wandel signed Dr. Ali's application for a permit from the New York State Medical Board to apply for clinical privileges to allow him to work with residents in clinical aspects of the uveitis

3

curriculum, however, Dr. Wandel failed to deliver his commitment to obtain him any clinical privileges, but Dr. Ali has continued to give residents lectures in the uveitis curriculum.

9.      Over the past three years, Dr. Ali published more than 8 scientific papers based on his own conceptions, 2 chapters in a text book, 2 IRBs, and applied for many grants for research funding.  Dr. Ali added Dr. Wandel's name to many of these works to make the WMC-NYMC program appear as a research and academic institution more prestigious, Dr. Ali received no remuneration in return, instead expecting based on WMC-NYMC representations that the institution would grant him a residency.

10.     In November 2016, Dr. Ali applied to the San Francisco Match and was formally interviewed at WMC.  While Dr. Ali did exceptionally well, and the attending physicians expressed great appreciation for my work, Dr. Ali has reason to believe that by reason of the false pretext that a resident gave negative feedback, he was unsuccessful.

11.     The represented plan for Dr. Ali, according to Dr. Wandel, was for Dr. Ali to start in July 2018 in a position at Defendants outside of the San Francisco Match, however in January 2017, when a resident dropped her residency position, Dr. Ali was offered that vacated position with the condition that he must pass USMLE step 3 before starting.  While working toward completing step 3, the Program Director asked Dr. Ali to attend clinic at Metropolitan and WMC to become familiar with the system and electronic medical records.  During this time, Dr. Ali discussed many times that successful completion of the step 3 exam is not required to commence the residency, and that he could, under ACGME and WMC-NYMC policy start the residency program and take the step 3 examination during his residency as is contemplated by the rules, and which, American medical graduates are allowed to do.

4

12. In April 2018, Dr. Ali passed step 3, however, by that time, a new Chairperson Dr. Kelley Hutcheson joined the Department. Dr. Hutcheson, with Dr. Bierman's assistance, created an extra position at PGY2 level and offered the residency position to a candidate that Dr. Hutcheson supervised at her prior position in Qatar. This extra position was neither posted nor did filling the position comport with normal logistics and procedures that provide equal opportunities for all candidates. In addition, another hurdle was placed before his application, when baselessly his clinical skills were questioned. Dr. Ali has impeccable clinical skills, substantiated by more than ten recommendations letters from prestigious institutions in the United States as well as very strong letters from Drs. Wandel and Sharma.

13. Confronted with new discriminatory hurdles, on July 2, 2018, Dr. Ali met with Dr. Wandel in his office, where Dr. Wandel agreed that Dr. Ali was not being treated fairly and Dr. Wandel agreed to work with Dr. Hutcheson to resolve these issues. Dr. Ali also updated Dr. Sharma about the meeting and also sent an email to Dr. Wandel about the meeting and the proposed plan to resolve these issues. During July 2018, Dr. Ali made three attempts to contact Dr. Bierman, the head of GME, to discuss the requirement for passing step 3, which delayed/blocked Dr. Ali from admission to the ophthalmology residency, but Dr. Ali received no response, until he was granted a meeting on July 20, 2018, at which, Dr. Bierman reiterated his position and the other attendees, Dr. Wandel and Dr. Hutcheson, remained silent.

14. After three years working without pay for WMC-NYMC, under the promise that Dr. Ali's outstanding research and publications (an area where WMC was sorely lacking), would garner him a residency, however, as a result of the discriminatory hurdles, he is no better positioned in his career. WMC-NYMC has misled Dr. Ali, discriminated against him, with the

result of a years-long delay in earning potential. Damages to his reputation, career advancement, and compensatory damages are significant.

15. On September 5, 2018, Dr. Ali formally presented his claims to WMC's attorney, Barbra Krakowski, who responded to him and claimed several pretextual reasons for the discriminatory treatment of Dr. Ali. WMC claimed Dr. Ali graduated medical school in 1994 and passed the USMLE Step 1 and 2 with low scores in 1998. However, NYMC-WMC was aware of Dr. Ali's scores when he left NYU to go to WMC-NYMC. He was asked to do research work for NYMC-WMC and publish as much as he could because NYMC-WMC was on probation for lack of academic activities according to Dr. Sharma. With respect to his Board scores, that is but one historical part of his CV—the import of which is diminished by his 4 clinical fellowships and more than 20 publications, including obtaining funding from the glaucoma foundation. His Board scores were well known, but he received an interview from NYMC and was awarded a position teaching. If his Board scores were truly an eliminating factor, then Dr. Ali has been misled during the almost three years that he continued to work for NYMC-WMC without pay.

16. The next speculative and pretextual reason raised by WMC-NYMC was a question why Dr. Ali did not continue/complete his residency training at Northshore LIJ, where he worked prior to NYU and WMC-NYMC. Dr. Ali knew that one year of clinical experience is required to improve his chances to advance his career in ophthalmology. After NorthShore LIJ, he worked a series of clinical fellowships in different areas and continued his research, which is a valuable contribution to his field. These years of hard work and dedication to ophthalmology in the United States

should be a credit to his professional development, enthusiasm, and genuine interest in the field.

17.   In fact, one cannot compare Dr. Ali's years of hard work against the candidate from Qatar, who after one year of surgery at Mount Saini hospital in 2014-2015, moved to Qatar. Incidentally, Mount Saini hospital, where this candidate worked, is a community hospital that has only some affiliation with John's Hopkins.

18.   WMC-NYMC also speculated as to why it had taken Dr. Ali some years to take and pass step 3. This is an irrelevant inquiry because, according to Federal and State Medical Boards, Step 3 is not a requirement to commence a residency, and it is not necessary to take and pass Step 3 except to obtain the final unrestricted state medical license. Moreover, obtaining an unrestricted license is not feasible for Dr. Ali because an unrestricted license requires formal residency training in the United States, which put Dr. Ali in a veritable "Catch 22." Most importantly, according to WMC contract page 40, successful completion of Step 3 is required during the second year of residency—and is not a condition for acceptance into the residency. Upon information and belief, no program in the country requires an applicant for residency to pass step 3 to commence a residency.

19.   The next speculative pretext WMC raised was that Dr. Ali's non-accredited fellowships were in subspecialty areas of ophthalmology—and do not count toward certification, and did not teach or re-enforce his general medical knowledge or knowledge of general ophthalmology. This is a complete misunderstanding and misrepresentation. All fellowships in ophthalmology are non-accredited because no board examination is required except surgical retina and oculoplastic—even medical

7

retina is non-accredited. *See AUPO and American Board of Ophthalmology.* Also, the chairman fellowship in pediatrics and program director fellowship in glaucoma are both non-accredited fellowships. The non-accredited fellowships were clinical fellowships, where Dr. Ali was treating patients. Drs. Wandel and Sharma letters extoll his clinical work, as well as letters from his mentors who expressed in recommendation letters Dr. Ali's bedside manner and patient feedback.

20.     Oddly, WMC-NYMC claimed Dr. Ali's the research was for NYMC, **not** WMC, and that Dr. Ali did not treat patients at WMC. When in fact, Dr. Ali worked for the ophthalmology department under NYMC and WMC, and specifically applied for IRBs at WMC. Further, while WMC operates the residency program, NYMC's Program Director's name was on publications, grants applications, although the work was entirely done by Dr. Ali.

21.     WMC-NYMC also speculates that Dr. Ali probably did not match in the 2016 San Francisco Match at other institutions for all of the reasons he did not match at WMC. As is indicative of WMC's bias against Dr. Ali, the Director attributed to a resident's one-time statement that Dr. Ali could be too old and slow for the job. Indeed, Dr. Ali was asked many times if he can wake up early if he is on call. In contrast to these discriminatory statements, Dr. Ali interviewed with two professors: Dr. Gerald Zaidman was impressed with Dr. Ali and his work. Dr. Zaidman told Dr. Ali that if you can manage three children, you can manage a residency very easily. Dr. Davae, a pediatric ophthalmologist at Metropolitan with whom Dr. Ali worked was very excited and happy to have him on board. As to the comment attributed to a resident, who worked with Dr. Ali for a year, that resident told Dr. Ali that Dr. Ali had his full support.

8

22. Dr. Ali has much previous training in general ophthalmology, without which he could not have obtained his fellowships in some of the best institutions in the country. There is little possibility for any candidate to be accepted for an ophthalmology fellowship unless the candidate had outstanding levels of general ophthalmology training. Moreover, all of his recommendation letters speak highly of his knowledge and clinical skills.

23. Dr. Wandel told Dr. Sharma and Dr. Ali that it is the policy for foreign medical graduates, according to Dr. Bierman, to have passed Step 3—"this is the policy for foreign medical graduates." This "policy" clearly contradicts the NYS Medical Board rule that step 3 is not required for commencing a residency.

24. Dr. Ali first applied in November 2015, one year before the San Francisco Match, for an advanced position of PGY 3, and his board scores and application were well known since that time. One can only conclude that he was misled to keep him working for free, if as WMC now claims, he was unqualified. Dr. Wandel's stated plan for Dr. Ali was that Dr. Ali would start on July 1, 2018, in a spot outside the Match, but this plan inexplicably changed when the resident dropped her position.

25. WMC claimed that Dr. Ali did not compare favorably to the resident from Qatar, who WMC claimed had superior credentials, *i.e.*, coming off an NIH grant at John's Hopkins, had impressive Step 1 and 2 scores and passed step 3. The Qatari resident acquired his medical degree in Lebanon and was thus also required to pass the step 3 exam.

26. Regardless of the credentials of the candidate from Qatar, the position appears to have been specially created for him without formal interviews or postings,

9

which is unfair to Dr. Ali and other candidates who could have applied for the position. Indeed, Drs. Wandel and Sharma had not met or even spoken to the candidate at all. In addition, according to Dr. Ali's information this candidate just completed his internship in Mount Sinai hospital—an affiliate of John's Hopkins when he left for Qatar. Also, there is no mention of his name in NIH records—and WMC was unwilling to provide evidence of his having obtained an NIH grant, as was represented. Moreover, for an USA NIH grant, this resident would have to be in already a full-time faculty position in order to receive a real grant. Also, this candidate did not complete his formal training in Qatar and has no publications. Dr. Ali in comparison has more than 20 publications, ten with Dr. Wandel's name. Dr. Ali is one of the few recipients nationwide with a grant from the glaucoma foundation. It is very clear, that Dr. Ali's CV--with all of his contributions in the field between training in general ophthalmology, 4 clinical fellowships, one grant, and 20 publications is a highly favorable candidate, and having been passed over in this regard is discriminatory.

27.     Dr. Ali worked successfully for highly prestigious institutions ranking in the top tier in ophthalmology, which unlike WMC, have never been on academic probation. Dr. Ali has consistently improved his credentials and should clearly be given the residency at WMC. Dr. Ali's has worked for NYMC-WMC as a non-paid instructor and advanced the prestige of the institution and the Chairman, for the institution to now shut him out is in a word despicable.

28.     WMC, as a pretext, attempts to fault Dr. Ali for not attending another residency program at the other institutions he worked. Dr. Ali worked hard to build his

CV and he achieved much over the last few years between publication, grants, and patient care. For this hard work, he should be credited with building his CV.

29.     In the Match program, each candidate has a rank list of 20 programs and Dr. Ali made his choices based on the strength of the institutions. A non-match in a first tear program does not mean he cannot match in other smaller programs, this is why there is rank list. Which institutions Dr. Ali ranked in the Match program is irrelevant to whether WMC-NYMC discriminated against him. According to Program Director Dr. Wandel and Director of Research, Dr. Ali performed great work in the department and his name was posted on the department journal by the chairman for his outstanding contributions.

## INJUNCTIVE RELIEF

30.     Plaintiff incorporates by reference the paragraphs above as if fully set forth herein.

31.     Dr. Ali has completed all aspects of the arrangement he made with WMC-NYMC to join their residency program. WMC-NYMC, despite having accepted and praised his contributions to the prestige of the institution, has refused to provide Dr. Ali with the promised residency program, and instead place unreasonable and discriminatory hurdles before him.

32.     Withholding the placement in the residency program is being done maliciously and with discriminatory animus with the direct intent and result of making it difficult for Dr. Ali to advance his education, to advance his professional development and to maximize through his life his professional standing and earning potential.

33.     Accordingly, Dr. Ali has earned and is entitled to a residency position.

## VIOLATION OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000 *ET SEQ.*

34. Plaintiff incorporates by reference the paragraphs above as if fully set forth herein.

35. The actions and omissions of the Defendants WMC-NYMC in discriminating and retaliating against the Plaintiff Dr. Ali violated his rights as a secured by the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. and as a result he was damaged.

## VIOLATION OF NEW YORK HUMAN RIGHTS LAW AND NEW YORK EXECUTIVE LAW § 296 *ET SEQ.*

36. Plaintiff incorporates by reference the paragraphs above as if fully set forth herein.

37. The actions and omissions of the Defendants WMC-NYMC in discriminating and retaliating against the Plaintiff Dr. Ali violated his rights as a secured by the under the New York State Human Rights Law New York Executive Law § 296 *et seq*.

38. Such conduct by Defendants has damaged Dr. Ali in a substantial amount, to be determined at trial.

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendants as follows:

a. Injunctive relief and/or declaratory judgment;

b. All back pay and back benefits to which he has been deprived;

c. Compensatory damages for the emotional harm the Plaintiff suffered as a result of the discrimination and retaliation;

d. Punitive damages for the outrageous, discriminatory and retaliatory actions of the defendants that discriminated and retaliated against the plaintiff;

e. Costs;

f. Pre- and post-judgment interest;

g. Attorney's fees; and

h. Any and all other relief this court deems just and appropriate.

**JURY TRIAL IS DEMANDED**

Dated: New York, New York,
January 14, 2019

|  | SADOWSKI KATZ LLP |
|---|---|
|  |  |
| By: | s/ Robert W. Sadowski |
|  | Robert W. Sadowski<br>800 Third Avenue, 28th Floor<br>New York, New York 10022<br>Telephone: (646) 503-5341<br>rsadowski@sadowskikatz.com |