# Robert W. Sadowski PLLC

800 Third Avenue, 28th Floor
New York, New York 10022

Fax: 646-503-5348
Phone: 646-503-5341
rsadowski@robertwsadowski.com

July 2, 2019

Christiana R. Doriety
Federal Investigator
U.S. Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

Re: *Amro Ali v. Westchester Medical Center & New York Medical College,*
    EEOC Charge No. 520-2019-02246 & 520-2019-02044

Dear Ms. Doriety:

Enclosed please find Dr. Ali's rebuttal to the response to his charge.

Sincerely,

Robert W. Sadowski

Dear Investigators,

## *Introduction:*

Thanks for offering me the chance to respond to WMC and NYMC lawyers, I read carefully their responses many times and my first impression is either their lawyers were misinformed or were misled.

It is very frustrating and disappointed when a program director, chairman, and head of the Graduate Medical Education (GME) office, with the help of their lawyers, are trying to create a misleading story without providing one documents or email except my SF application to convey a message that I have low board score.

They did not produce the recommendation letters which included a letter from their program director because they know this letter will reveal their misrepresentations and raise the question: "If the program director Dr. Wandel wrote Dr. Ali such a wonderful letter, why is he telling another story now?"

One of the major problems with WMC and NYMC responses is a loss of trust in the health care system—how can I go my physician and I trust that he will not tell lies. It is very clear to me that the program director, chairman, and head of GME office conspired against a foreign medical graduate because they thought I am too little to stand up against them. This undercuts honor and dignity.

Let us stop for one minute and think, what is common between these three physicians but different about Dr. Ali:  Different culture, ethnicity, religion, and values.  What is great about America is the acceptance of diversity and looking to people's heart not to their color, age, race, or other characteristics or beliefs.

It is very clear that these days some people feel that if they have the power and/or the money, they are entitled to change other people pathways. This situation is one of them, why an institution such as WMC-NYMC stooped to level of telling the lie that they had security escort Dr. Ali from meetings.  How can this happen without any written evidence or documents, such as security logbook, cameras, or incident reports.  Let us assume for one second that this happened, what was the action taken by the department in response to that?  Nothing.

It surprised me that they claimed that I was agitated and they escorted me outside the meeting without any disciplinary action or even telling my direct superior, Dr. Sharma.  Of course, you can review all these details with Dr. Sharma.

Defendants focused on the following: low board scores, old "graduated two decades", was never promised anything, being emotional and agitated in the meeting.  Again, Defendants built their defense based on the destruction Dr. Ali's image to that extent that, they do recognize the following:

1. There are formal communications with Drs. Wandel, Bierman, Hutcheson regarding step 3 prerequires to start the residency.
2. All Dr. Ali fellowships are clinical and he also participated in research.
3. Dr. Ali was funded from The Glaucoma Foundation.
4. If Dr. Ali was not good enough, why was he offered the position from the beginning and he has been asked to attend at Metropolitan hospital (Residents spend half time at WMC and half time at Metropolitan).
5. Dr. Sharma was aware of details and he has been told on many occasions in person and over the phone that step 3 is required for foreign-trained medical graduate by Dr. Wandel.  Dr. Wandel also mentioned that Dr. Bierman is dictating the rules.
6. All my correspondences to FSMB and ACGME asking if step 3 is required to start my residency.
7. The ACGME email that states treating foreign medical graduates different from American medical graduates falls under prevention of harassment policy.
8. Emails from Dr. Wandel and his assistant asking about date of results of step 3 at WMC.
9. Hiring a candidate from Qatar because he was working there with the Chair (Dr. Hutcheson was Director in eye Hamed clinic for three years in Qatar.  Other internal strong candidates were supported by Drs. Wandel and Sharma. This position was created and funded for this candidate. There was not even posting for the job or formal interview according to Dr. Wandel. Dr. Wandel told Dr. Sharma and me the same.
10. Dr. Sharma offered them (Drs. Wandel, Hutcheson and Bierman) a good plan, if they do not trust my clinical skills and they do not trust all these recommendation letters, they can try me on the floor for few months—still, Dr. Hutcheson refused.  Thus, this matter is not about my clinical skills, it is about something else.
11. Drs. Wandel and Hutcheson asked Dr. Ali many times to support the residents by giving lectures.

2

**Background:**

*Paragraph 1:*
*Comment 1: RELATIONSHIP WITH DR. SHARMA*
*RESPEONSE:*

I knew Dr. Sharma since 2008, when I was working at New York Eye and Ear Infirmary.  In October 2018, I was working at NYU as full-time research scientist and I recall this month very well because I had a bad car accident on October 21, 2015, and I was walking on a cane for almost 6 months.  During this time, I had a meeting with Dr. Sharma to apply for a grant together.

Dr. Sharma as usual was very supportive and we started to work together. Dr. Sharma was aware about my research capabilities and in more than one setting mentioned that there is a great need for my research in the department especially during the renewal of accreditation. ACGME requested more research activities and publications from Defendants, which in turn would help me and support me getting into the residency program.  So, the plan was to work hard and to publish so Defendants can support my application to a residency spot at Defendants' program. This is the best way that I can describe the beginning of my relationship with the department. Dr. Sharma introduced me to Dr.Hutchenson for the first time in her first month and Dr.Sharma was clear that there was a plan for me to start my residency after step 3, she mentioned there is no opening now. This happened before she created the spot for the resident from Qatar.

SUPPORT:
*WITNESS 1: DR. SHARMA: DR. SHARMA CAN PROVIDE INFORMATION ABOUT OUR INTERACTION DURING MY FELLOWSHIP AT NEW YORK EYE AND EAR INFIRMARY.

*Comment 2: JOINING NYMC TO DO ONLY RESERCH:*
*RESPONSE:*

This is incorrect, the reason I moved to NYMC was to help the department apply for grants and to publish more manuscripts for them, and in turn I would receive a residency. I was clear from day one that I will work hard to help the department in exchange for their support to get me into residency.  I was clear from day one about my board scores, age, and country of origin.

3

I applied in December 2015 for an advanced position, and Dr. Wandel received my application before I obtained my appointment as a clinical instructor.

This proves two things:

(1) I was clear about my interest in an ophthalmology residency from day one and not during my research.

(2) If I was not seeing real and serious support for me to get my residency why would I work for free publishing 8 articles in addition to writing grants and many Institutional Review Board protocols (IRB).

(3) If WMC-NYMC views me as unqualified, why I was misled by the department for three years.

The main reason I joined NYMC was fill a gap and to improve research performance with the help of Dr. Sharma because the department was not active in research with the exception of Dr. Sharma.

Dr. Sharma was aware that Dr. Wandel promised me clinical privileges and to be involved in teaching the residents. **Dr. Wandel himself signed license permit, and I was approved by NY state medical board** to have licenses for one year, but Dr. Wandel failed again to fulfill his promises. I also gave residents lectures in the uveitis curriculum.

SUPPORT:

*WITNESS 1: DR. SHARMA: DR. SHARMA CAN PROVIDE INFORMATION ABOUT THE PLAN TO GET CLINICAL PRIVILEGES.

*WITNESS 2: DR. WANDEL: HE CAN CONFIRM THAT HE SIGNED MY LICENSES AND HE PROMISED ME TO GET ME CLINICAL PRVILEGES.

***Comment 3: ALL MY FELLOWSHIP WERE RESERCH FELLOWSHIPS.***
***Comment 4: DR.ALI NEVER PRACTICED OPHTHALMOLOGY.***
*RESPONSE:*

I practiced ophthalmology in the United States for more than 8 years and during these years (Clinical fellowship) I was a licensed physician, to be clear to have a full unrestricted license you have to complete 3 years of accredited ACGME training, if you are not in residency you cannot obtain a full unrestricted license. So, during my fellowships, I practiced with a licensed fellow which allowed me to have a full practice within the institution, but I could not work in private practice.

All my fellowships were clinical fellowship (**SEE ATTACHMENT)** where you practice ophthalmology and have clinical licenses in the following states (MI, NY, OR) to see patients and to work in some surgeries or procedures. (**SEE ATTACHMENT)**

SUPPORT:

*CLINICAL FELLOPWSHIP CERTIFICATE

*RECOMMENDATION LETTERS


**Paragraph 2:**


***Comment 5: DISCUSS DR. ALI'S INTEREST IN OPHTHALMOLOGY RESIDENCY.***


*RESPONSE:*

*Dr. Sharma was aware of my interest in starting my career in clinical ophthalmology especially because he knew I was doing my fellowship at the New York Eye and Ear Infirmary.*

*So, I did not start working for the Ophthalmology department before I met with Dr. Sharma and Dr. Wandel, and I expressed my interest in a residency if I in turn I worked for the department to develop research with Dr. Sharma.*


SUPPORT:

*WITNESS 1: DR. SHARMA:

*WITNESS 2: DR. WANDEL

***Comment 6: DR. SHARMA AND OTHERES.***


*RESPONSE:*

I spoke to Drs. Sharma and Wandel about my interest in very professional ways.  I had many meetings with them to discuss other issues relevant to publication and research projects. During these meetings, I got a lot of support for my work and for my chance in obtaining a residency.

SUPPORT:

*WITNESS 1: DR. SHARMA:

*WITNESS 2: DR. WANDEL

***Comment 7: FRIST TIME TO APPLY FOR RESDIENCY WAS DECEMEBER 2015 AND NOT SEPTMEMEBR 2016.***


*RESPONSE:*

In their response, Defendants rely on the board score and year of graduation as if these facts were a surprise for them.  I applied for this position in December 2015 before NYMC hired me as clinical instructor.  So, they reviewed my application twice: once for PGY2 position and a second time before they hired me as clinical instructor. This is very important to explain to you that my application was reviewed more than one time and nothing was hidden or surprising. The only explanation for what happened is Defendants are being deceptive and manipulative.

SUPPORT:
*WITNESS 1: DR. SHARMA:
*WITNESS 2: DR. WANDEL

**Comment 8: SF MATCH:**

**RESPONSE:**
I think the Defendants mix up fellowship and residency, one cannot obtain a fellowship except after completion of a residency in the United States or in another county.  The fact that I was able to obtain a clinical fellowship in a very prestigious place such as New York Eye& Ear Infirmary, as well as Casey Eye Institute without completion my formal residency training in USA shows that I have outstanding clinical skills especially as I was involved in teaching residents.

Paragraph 3:
**Comment 9: Step 3 pre-requites:**

**RESPONSE:**
Step 3 is not a requirement for getting into or for starting any residency in the United States pursuant to FSMB and there is no need to take step 3 until applying for final unrestricted licenses. This unrestricted license is not now feasible for Dr. Ali in any way as it requires formal residency training in the United States, which he is trying to obtain.

According to WMC contract page 40, Completion of step 3 is required during the second year of residency and no program in the country mentioned in their contract it is required to pass step 3 before you start your residency.  **Why has Dr. Ali been misled by asking him for the completion of step 3 and in the same time using his time and effort for free under false promises and hopes.**

6

**According to Defendants' previous lawyer's letter** "Passing the USMLE Step 3 was a condition to being considered for the off-match slot that opened in 2017 because he was many years removed from medical school and his PGY 1 general medical education, and had zero years of general ophthalmology training.   Now, the **new lawyer contradicts** what was said by the first one.  As this response claims that there were no promises for **passing step 3.**

### *Comment 10: 20 years of hard work:*

*RESPONSE:*

Dr. Ali has previous training in general Ophthalmology, without which he could not obtain all these fellowship in the best clinical places in the country.  There is no way for any candidate to be approved for ophthalmology fellowship except if he was had an outstanding level of general ophthalmology, especially if he did very well in his fellowship as per all recommendation letters.

Finally, the reason for obtaining ophthalmology residency training is to be trained in general ophthalmology. You are not expecting to hire first year resident to do cataract surgery in his first month nor you are required to be five-star ophthalmologist to start your residency, but you need to show hard work and dedication in this area.  Board scores are an essential element for fresh graduate with zero experience or contributions in the field as this is the only way to show a difference.

Dr. Ali was working hard with high dedication for years to get this position and he was promised the position conditioned by step 3.  Dr. Wandel told Dr. Sharma and Dr. Ali that is the policy for foreign medical graduate (FMG) as stated by Dr. Bierman. Dr. Ali communicated with NYS Medical board and addressed this concern and NYS Medical board stated that step 3 is not required for starting a residency. This email from NYS Medial board was forwarded to Drs. Sharma and Wandel.  Dr. Wandel mentioned clearly to Dr. Ali that he cannot touch patients without step 3 as foreign medical graduate.

### *Comment 11: Recommendation letter:*
*RESPONSE:*

Defendants intentionally hid the recommendation letters from Dr. Sharma and Dr. Wandel.

I will send you copy as attachment but I would like you to discuss this letter especially with Dr. Wandel, program director. (see attachment)

Paragraph 4:
**<u>Comment 12: Step 3:</u>**

**RESPONSE:**

My response to step 3 is the same, I have been asked to take the exam as it is the requirement for FMG and not American Graduate as Dr. Wandel told Dr. Sharma that very clearly on many occasions over the phone and in person.  Dr. Wandel said that Dr. Bierman dictated the rules. There are many emails that occurred between Drs. Wandel and Berriman in this regard.

> **<u>*Responses to step 3 pre-request is supported by the following documents:*</u>**

i.      *Email from Dr. Wandel asking to pass step 3 to start.*

ii.     *Emails from me to FSMB and NYSMB asking about the eligibility to ask for step 3 as I am FMG.*

iii.    *My email to ACGME and I asked them for situation if I am asked to pass to step 3 as I FMG, their response that it falls under prevention of harassment policy.*

iv.    *Asking me formally to go to Metropolitan hospital to work with the resident to be familiar with medical record and the workflow.*

> **<u>*Responses to step 3 pre-request is supported by the following witness:*</u>**

i.      Dr. Sharma

ii.     Dr. Wandel and his assistant, Mary.

iii.    Dr. Eric Rosenberg.

iv.    Dr. Wong and his office manager, Randi Hartman at Metropolitan.

v.     Walid and Nancy, "technicians at Metropolitan hospital, ophthalmology Department."

**<u>Comment 13: Interview evaluation:</u>**
**<u>RESPONSE:</u>**

According to PD (Program Director) in the meeting held in July 21, Dr. Ali was in the lower of the second patch and he attributed that to resident's opinion and he mentioned one time to Dr. Sharma that he can be old and slow for the job.  He asked many times if he can wake up early if he is on call.  **Do you have any record showing the rank order and the evaluation?**

Dr. Ali has been interviewed with two professors; Dr. Gerald Zaidman who was impressed with his CV and work  He even told him if you can manage three kids you can manage residency

very easily as well as Dr. Davae Pediatric ophthalmologist at Metropolitan who Dr. Ali worked with her after interview at Metropolitan and she was very excited to have him on board.

Moreover, all of Dr. Ali's recommendation letters speak highly of his knowledge and skills including Dr. Wandel's letter where he stated himself that Dr. Ali set himself apart from other candidates for a residency position by his dedication and willingness to help in all aspect of teaching.  Dr. Wandel also stated that Dr. Ali is a true team player who excels in making his co-workers feel that they are working for a common goal. In addition to that, Dr. Wandel also said in his letter that Dr. Ali has the highest level of integrity of kindness and respect to others.

NYMC-WMC cannot make their own policy for older graduates as this is a discriminatory process based on age and ACGME has no supporting guideline for such discrimination.

SUPPORT:

*WITNESS : DR. Dr. Gerald Zaidman. Corneal service, WMC

*WITNESS : DR. Dr. Davae, Pediatric Ophthalmology at Metropolitan Hospital.

### _Comment 14: Foreign trained from Qatar:_
### _RESPONSE:_

Again, it is very clear that defendant forgot to mention or intentionally failed to disclose that the foreign trained Jordanian worked closely with the chairman in Qatar and he did not even finish his formal residency training there.  As he has no degree so far from Hamed Hospital from Qatar.  **We have all respect for this candidate but the whole process raised many questions.**

Regardless the credentials of the candidate from Qatar, the position has been created and the fund has been allocated for him with the help of Dr. Bierman.  It is very important to mention that this position has not posted and no formal interview has been established.

Dr. Ali has been told by Dr. Wandel that he has to do a telephone interview with the Qatar candidate as per Dr. Hutcheson's advice on completing formalities, and Dr. Wandel mentioned to Dr. Sharma that he has not met or spoken to the candidate at all.

The previous response from WMC and NYMC, mentioned that this Jordanian candidate has an **NIH grant** and when we asked many times for NIH grant number, we got nothing because

this is another lie.  Once cannot submit an NIH grant application unless you have to have a fulltime faculty position.

This candidate **did not complete even his formal training in Qatar and has no publications** compared to Dr. Ali who has more than 20 publications and ten of them also have the name of Dr. Wandel.  In addition, Dr. Ali was funded as Co-PI from the glaucoma foundation with few people nationwide getting this grant every year. It is very clear that Dr. Ali's CV with all his contributions in the field between training in general ophthalmology, four clinical fellowship, one grant and 20 publications should be highly favorable candidate and what happened was a clear-cut case of discrimination and harassment.

Paragraph 5:

***Comment 15: Meeting With Dr. Hutcheson.***
***Comment 16: Meeting With DRs. Berriman, Hutcheson and Wandel,***
***Comment 17:* Emotional and Agitated:**

***RESPONSE:***
After meeting with Dr. Wandel, he promised that he will communicate with Dr. Hutcheson as she is the chairperson now and she is in charge. I emailed Dr. Hutcheson many times to meet with her to understand why I was rejected after all these promises and I have been asked to pass step 3 which is not required.

She rescheduled the meeting many times by her assistant Michelle Hodge and finally she agreed to meet me in her office in July.  I did not feel good about this meeting because there was a period of silence from Dr. Wandel as well as Dr. Bierman, who did not respond to three emails from me.

The plan was to meet with Dr. Hutcheson in her office, but I was surprised the meeting place was changed. I spoke to Michelle Hodge and I asked her why we change the location of the meeting and who will attend the meeting, but she refused to give any answers. I felt that something bad was coming from this meeting.  I went to the meeting and I found Dr. Hutcheson's assistant waiting for me at the front desk welcoming me.

10

I went into the meeting and I was sat at the head of the table, Drs. Wandel and Hutcheson were on my left and Dr. Biermann was on my right.  Dr. Bierman took the lead and tried to say the residency position was a one-time offer.  Dr. Hutcheson said nothing, and Dr. Wandel kept his face down and was silent all meeting. Michelle Hodge was there writing meeting minutes but I felt that she was selective in her notes based on visual contact with Dr. Bierman.

I asked Dr. Bierman before the meeting through email, three times on three emails with no answer, "why did you ask me to take step 3?"

Before I left the meeting, Ms. Hodge, who took the minutes, was kind enough to come to shake my hand telling me she was sorry and she wish that I could seed a better position. I smiled and left, I met Bierman standing by the door, who told me this is a nice day to have a walk, I said thank you, and I walked to Dr. Sharma office.

Defendants have revised this conversation, saying I was so emotional and agitated to the point that they escorted me outside.  Cameras would show if I was escorted or not, the security guard logbook would have an entry, the meeting minutes and many other things prove not only lies but really poor lying.  It surprised me that they claimed that I was agitated and they escorted me outside the meeting without any disciplinary action or even telling my direct superior, Dr. Sharma.  Of course, you can review all these details with Dr. Sharma.

 CLAIM of DISCRIMNATION IS FRIVOLOUS:

### ***Comment 18: Dr. Ali's performance and lack of skills disqualify him from consideration.***

RESPONSE:

The response to defendants is very simple:  if a candidate with a master's degree in ophthalmology, 4 clinical fellowship in ophthalmology, and more than 25 publication is not enough for you, please review your staff and see how many they can publish together in one year.  With the exception of Dr. Sharma, I published alone more than all the department together in one year as per Dr.Sharma.

If Defendants think that Dr. Ali does not have the skills or the capability, why not review Dr. Wandel, the program director's recommendation letter where he speaks highly of his knowledge and skills and where Dr. Wandel also stated that" **Dr. Ali set himself apart from other**

candidate for a residency position by his dedication and willingness to help in all aspect of teaching. Dr. Wandel also stated that **Dr. Ali is a true team player who excels in making his co-workers feel that they are working for a common goal**. In addition to that, **Dr. Wandel also said in his letter that Dr. Ali has the highest level of integrity of kindness and respect to others.**  I am also sending you many recommendation letters and I will ask the investigators to review themselves.

 LIST OF Witness:
i.      Dr. Sansar Sharma
ii.     Dr. Wandel (Program Director) and his assistant, Mary.
iii.    Dr. Eric Rosenberg. Senior Resident
iv.     Dr. Raymond Wong (Former Acting Chairperson) and his office manager at
        Metropolitan, Randi Hartman.
v.      Walid and Nancy, "technician at Metropolitan hospital, ophthalmology
        Department."
vi.     Jordanian resident. Dr. Sameer Shweiki
vii.    Dr. Hutcheson Kelly(Chairperson)  and Ms. Michelle Hodge
viii.   Director of Security.
ix.     Dr. Gerald Zaidman. Corneal service, WMC
x.      Dr. Davae, Pediatric Ophthalmology at Metropolitan Hospital.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5ᵗʰ Floor
New York, NY 10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
District Office: (212) 336-3620
General FAX: (212) 336-3625

June 11, 2019

<u>**Via Postal Mail**</u>

Attn:   Mr. Robert W. Sadowski, Esq.
c/o Amro Ali
800 Third Ave., 28th Floor
New York, NY 11778

Re:   **Amro Ali   v.   Westchester Medical Center & New York Medical College**
**EEOC Charge No. 520-2019-02246  &   520-2019-02044**

Dear Complainant,

Enclosed you will find a copy of the position statement submitted by *Westchester Medical Center & New York Medical College* ("Respondent") in connection with your above referenced charge of discrimination. Please review it carefully.

**Please be advised that the enclosed response to this Charge is a strictly confidential document and the contents are not to be disclosed, released, or discussed with anyone.**

The EEOC would like to give you an opportunity to submit a rebuttal to the enclosed response to your Charge. Your rebuttal should point out what you believe to be errors, omissions, or misstatements relevant to your Charge and should include any supporting documentation (i.e., letters, e-mails, etc.) that you received and/or gave to your employer which supports your allegations of discrimination. If you have any witnesses who have direct knowledge or information that is relevant to your Charge, please describe in detail what information each witness can provide the EEOC and include their contact information.

Please submit your written rebuttal by **July 5, 2019**. Once we obtain your rebuttal information, we will consider it, along with all other investigative information, and determine what further steps, if any, are required to complete the investigation.

If you have any questions, please call me at (917) 410-4022 or email me at <u>Christiana.Doriety@eeoc.gov</u>.

Sincerely,

Christiana R. Doriety
Federal Investigator



Paul F. Millus
Member of the Firm

Meyer, Suozzi, English & Klein, P.C.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194
Dir: 516-592-5933   Tel: 516-741-6565
Fax: 516-741-6706
pmillus@msek.com
www.msek.com

June 10, 2019

**VIA E-MAIL**

Christiana R. Doriety, Investigator
U.S. Equal Employment Opportunity Commissioner
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004

     Re:   EEOC Charge No. 520-2019-02246
          Ali/Westchester Medical Center and New York Medical College

Dear Ms. Doriety:

    We are the attorneys for Westchester Medical Center ("WMC") and New York Medical College ("NYMC") in connection with the above-referenced EEOC Complaint filed by complainant Amro Ali, M.D. ("Dr. Ali"). Please accept this narrative response together with the attached Answer to the Complaint of Discrimination filed by Complainant on April 22, 2019.

**BACKGROUND**

    Complainant first came to the attention of NYMC in or around October of 2015 when he approached Dr. Sansar Sharma ("Dr. Sharma") and offered to assist Dr. Sharma, who served as a Professor of Ophthalmology and Neuroscience at the NYMC, to perform research and writing. Dr. Ali first studied Ophthalmology and Vision Science in Alexandria University in Egypt eventually obtaining a Master's Degree in the early 1990s and since that time has never participated in an Ophthalmology Residency program and is not a licensed physician. He has been involved in a series of fellowships performing research and writing various areas associated with Ophthalmology. but has never practiced as a physician in this field performing services for a patient as a fully licensed physician.

    During his tenure as a researcher, Dr. Ali did indicate that he was interested in obtaining a Residency at WMC through his work at NYMC. He spoke to Dr. Sharma and others several times regarding this matter and was told that they had no power to have Dr. Ali accepted in a Residency program but would support him if they could, primarily based on the fact he was assisting NYMC in an unpaid position. In September of 2016 he applied for what is known as the "San Francisco

GARDEN CITY
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194
Tel: 516-741-6565 | Fax 516-741-6706

NEW YORK CITY
1350 Broadway, Suite 501
P.O. Box 822
New York, New York 10018-0026
Tel: 212-239-4999 | Fax: 212-239-1311

WASHINGTON, D.C.
1300 Connecticut Avenue, N.W.
Suite 600
Washington, DC 20036
Tel: 202-887-6726 | Fax: 202-223-0358

Christiana R. Doriety, Investigator
June 10, 2019
Page 2

Match" ("SF Match"). The SF Match or the "Ophthalmology Fellowship Match (OFMP)" was established in 1985. Its goal is to coordinate fellowship appointments between prospective Residents and medical institutions. Participating programs do not make any appointments until the match has been completed. The Association of University Professors of Ophthalmology sponsors the matching process and is responsible for enforcement of applicable rules. The SF Match office does not sponsor or approve any of the participating programs. The function of the Matching Program is strictly limited to processing of the match. [Comment 8]

The match takes place each year in December and is used to process all applicants who want to start their fellowship training in July of the following year. Applicants are responsible for ensuring they meet all prerequisites for eligibility prior to registering for the match. According to Dr. Ali's application for the SF Match, he completed his United States Medical Licensing Examination (USMLE) Step 1 in July 1998 and his Step 2 in May, 1998. His Step 1 and 2 scores were low and below the acceptable threshold. He had not passed his Step 3 which was highly unusual for someone who had been out of medical school for over 20 years. A copy of Dr. Ali's SF Match Application is annexed as Exhibit "A." If successful in the SF Match, Dr. Ali would have been eligible for a Post Graduate Year 2 Residency Position in Ophthalmology ("PGY2") even though he had been out of school since 1994. Dr. Sharma, Dr. Thaddeus Wadel – who was Program Director at NYMC, and Dr. Ronald Gentile of the NY Ear and Eye Infirmary provided the requisite three (3) recommendation letters. [Comment 8] [Comment 9] [Comment 10]

He participated in the interview process in December 2016. Because he was out of school for such a long period, and had been involved in only research and writing for many years, he was required to take the USMLE Step 3 exam before he could be offered the position assuming he passed the interview stage. Dr. Ali met with all of the Ophthalmology Residents at WMC and senior administrative staff. Dr. Ali's performance in the interview process was subpar. He did not come close to the other candidates, and was in the bottom third in terms of his reviews, and, thus, was not offered the position. Thereafter, he continued his uncompensated research and writing work with Dr. Sharma. A foreign trained Jordanian Ophthalmologist, who scored far higher than Dr. Ali, had passed his USMLE Step 3, and had not been removed from medical school for two decades like Dr. Ali, eventually obtained a Residency position. [Comment 11] [Comment 12] [comment 13] [comment 14] [comment 15.]

In June of 2018, Dr. Ali again inquired about obtaining a Residency position by contacting Dr. Kelly A. Hutchinson who is the Director of Ophthalmology, Westchester Health Network and the Chairman of the Department of Ophthalmology at NYMC. A meeting was held in early July 2018. Dr. Ali, Dr. Hutchinson, Dr. Thaddeus Wandel and Dr. Frederick Z. Bierman, Director and Chief of Graduate Medical Education for WMC were present. Dr. Ali was told that he would not be offered a position as a Resident at WMC. Dr. Ali complained the process was not fair but did not offer any specifics. He was told the process was indeed fair and the fact he passed the Step 3 exam was not part of some *quid pro quo* for his being named to the Residency staff. Dr. Ali became agitated and emotional. He then began threatening to sue and was eventually led out of the meeting by security personnel. [comment 15] [comment 16] [comment 17] [comment 18]

Christiana R. Doriety, Investigator
June 10, 2019
Page 3

## COMPLAINANT'S CLAIMS OF DISCRIMINATION ARE FRIVOLOUS

First, Dr. Ali was never employed by WMC and his association with NYMC was never more than a voluntary relationship. He received no pay or benefits. Moreover, Complainant has absolutely no basis in law or fact to contend that he was the victim of unlawful discrimination. Although unclear as to the exact nature of his discrimination and retaliation claims, there is no evidence that either WMC or NYMC discriminated against Dr. Ali based on his national origin or age. Indeed, the one position that he applied for was eventually given to a foreign born and trained physician from the Middle East. He has no evidence other than conjecture that he was not able to obtain a Residency position based on his national origin or age. When Dr. Ali writes concerning his being required to take the USMLE Step 3 Exam, prior to being eligible for Resident status at WMC, it should be made clear that no promise was ever made that if he passed Step 3, that he would be admitted into WMC's Residency program. This is a machination of his mind and nothing more.

In fact, there is indisputable proof that it was Dr. Ali's performance and lack of abilities that disqualified him from consideration. While it is customary that, early in that physician's career he/she will obtain admission to a Residency program, and during that Residency program complete Step 3, Dr. Ali had not even come close to actually being in a Residency program within a reasonable time after he completed his studies overseas. It was also highly unusual that Dr. Ali would simply perform research and writing for almost two decades after he completed medical training overseas and not yet have completed a Residency program and/or passed the USMLE Step 3.

As such, Dr. Ali's primary argument is that he was promised that if he passed the Step 3 he would be permitted to the Residency program at WMC, is false. In fact no such promise could be made as far as Dr. Sharma was concerned. Dr. Sharma had no control whatsoever over who was selected into a Residency program, and, thus, could never make such a promise. The same goes for Dr. Thaddeus Wandel and Dr. Bierman. If Dr. Ali were to qualify to become a Resident, many others were involved in that process and the ultimate decision was based on that process which Dr. Sharma, Dr. Wandel and Dr. Bierman had no input in – let alone the ability to control. In sum, Dr. Ali's filing before the EEOC is frivolous. Of course, Dr. Ali's claim cannot be viewed as based on a breach of contract as the EEOC would not have jurisdiction over such a claim, and this type of claim would be barred by the statute of frauds in any event.

Accordingly, WMC and NYMC will cooperate in the EEOC's investigation and are also prepared to defend against Complainant's claims. If you require any further information, please let me know.

Respectfully submitted,

Paul F. Millus

PFM:mr
Attachment

4261442

# EXHIBIT A

---

**SF Match**
**Central Application Service**
**Ophthalmology Residency**

Name: Amro Ali

ApplicantID : 13407

---

## PERSONAL DATA

| Name (Last) | Name (first) | Name (Middle) |
|---|---|---|
| Ali | Amro | M |

Address where you can best be reached:
110-27 72nd. dr., Apt# 2, Forest hills, NY, 11375, United States

Day Phone: 347-623-5406
Eve. Phone: 347-623-5406
Email: amromd@hotmail.com

Alternative, permanent address:

Day Phone:
Eve. Phone:
Email:

I will be able to start training for this residency in : 2016

Are you legally eligible to work in the US during the duration of this training program ?  ☑ Yes   ☐ No

Do you now or in the future need sponsorship from an employer in order to obtain, extend or renew your authorization to work in the United states ?   ☐ Yes   ☑ No

If yes, what type of Visa will you pursue ?
☐ J1   ☐ H1B   ☐ 0-1   ☐ Other _____

---

## PREREQUISITES

I have passed the following examinations:

USMLE, Step 1
   Date: 7/12/1998   3 digit Score: _____   2 digit Score: 76
   Number of times taken: _____

USMLE, Step 2 CK
   Date: 5/4/1998   3 digit Score: _____   2 digit Score: 79
   Number of times taken: _____

USMLE, Step 3
   Date: _____   3 digit Score: _____   2 digit Score: _____
   Number of times taken: _____

I expect to take the USMLE Step _____ exam on _____ and should receive my score in _____

I have previously passed the following exam(s) which are still valid:

☐ NBME   ☐ ECFMG   ☐ FLEX   ☐ VQE   ☐ COMLEX   ☐ Other:_____

I am licensed in the States of:   NY

ECFMG Registration number (if applicable): 0-560-500-1

1

**SF Match**
**Central Application Service**
**Ophthalmology Residency**

Name: Amro Ali

Applicant ID: 13407

---

## EDUCATION:

List your college, medical school, and graduate level experience in chronological order (most recent first):

| School / Medical Facility/Institution | Major/ Specialty | Dates Attended From (mo/yr) to (mo/yr) | Degree / Date granted | GPA – if noted on transcript |
|---|---|---|---|---|
| New York Medical College | Ophthalmology | 10/2015- till present | Clinical Instructor | |
| New York University Langone Medical Center | Neuroscience | 07/11 to 12/2015 | Research Scientist | |
| Casey Eye Institute | Uveitis | 07/09 to 06/11 | Fellowship | |
| New York Eye & Ear Infirmary | Uveitis | 07/07 to 06/09 | Fellowship | |
| Henry Ford Hospital | Retina / Neuro | 07/03 to 12/05 | Fellowship | |
| North Shore University | General Surgery | 07/02 to 06/03 | PGY1 | |

Medical School Class rank (if available): _____  ☑ Class rank not available

AOA Honor Society is available at my school: ☐ No   ☑ Yes  (if yes, check all that apply below):

☐ I was elected as junior/senior.   ☐ I was not selected for AOA.

---

## LETTERS OF REFERENCE

Please indicate below the letters of reference that are part of your application:

**Letter Reference #1**

Name and Title:
Sansar Sharma, Ph.D. Professor of Ophthalmology and Neuroscience.
Institution:
New York Medical College
Address:                                                                 Phone:
40 Sunshine Cottage Rd, Valhalla, NY 10595                914- 594-4382

☑ I have waived access to this letter and have informed the author of this confidentiality.
☐ I desire access to this above letter and have informed the author.

**Letter Reference #2**

Name and Title:
Thaddeus L Wandel, MD  Professor of Ophthalmology and Residency Program Director.
Institution:
New York Medical College
Address:                                                                 Phone:
40 Sunshine Cottage Rd, Valhalla, NY 10595                914- 271-5026

☑ I have waived access to this letter and have informed the author of this confidentiality.
☐ I desire access to this above letter and have informed the author.

**Letter Reference #3**

Name and Title:
C. Michael Samson, MD, MBA-Co-director, Uveitis Service
Institution:
New York Eye and Ear Infirmary
Address:                                                                 Phone:
310 East 14th Street, New York, NY 10003                212-979-4515

☑ I have waived access to this letter and have informed the author of this confidentiality.
☐ I desire access to this above letter and have informed the author.

2

**SF Match**
**Central Application Service**
**Ophthalmology Residency**

Name: Anas Ali

Applicant ID: 13407

*This section is to help selection committees achieve a better understanding of your experience, motivations, interests and work preferences related to the specialty.*

**Past and Present Employment:**

| Employer | Address | Dates Employed From (mo/yr) to (mo/yr) |
|---|---|---|
| New York Medical College | 40 Sunshine Cottage Rd, Valhalla, NY 10595 | 10/2016 till present |
| New York University Langone Medical Center | 550 1st avenue, New York, NY 10016 | 07/2010 - 12/2016 |
| Casey Eye Institute | 3181 S.W. Sam Jackson Park Rd, Portland, Oregon 97239-3098 | 07/2007 - 06/2010 |
| New York Eye & Ear Infirmary | 310 East 14th Street, New York City, New York 10003 | 07/2005 - 06/2007 |
| Hakeem Eye Institute | 103 Warren Street Dearborn, Michigan 43201 | 07/2004 - 06/2005 |
| Henry Ford Hospital | 2799 West Grand Boulevard , Detroit, Michigan 48202 | 07/2002 - 06/2004 |
| North Shore University | 300 Community Drive , Manhasset, New York-1 1030 | 07/2001 - 06/2002 |

Public Service and Activities:

New Avenues for Youth's Mission (NAFY) Program:
A program that offers services that empower homeless youths to exit street life. I provided medical care through this program to many homeless. We also planned to expand to provide this medical care to some nursing home and day care centers.

Casey Eye Institute Mobile Clinic:
This is mobile clinic with free services serving areas outside of the city. This clinic helped in screening and early diagnosis of early of many eye diseases such as diabetic retinopathy and macular degeneration.

New York Eye and Ear Infirmary:
We used to spend one day over the weekend end for public screening. This screening helped in providing refraction, recommendations, and referrals to sub-specialty ophthalmologist.

University of Alexandria Outreach Community Program for Sanitation and Hygiene:
We used to go for trips to underserved areas to discuss and address challenges such as lack of water and electricity.

Egyptian National Program with WHO for Poliomyelitis Eradication:
Our main focus during this mission is to provide vaccines and education.

Outside interests and hobbies:

My hobbies and interests depend on whether I am at home or outside. If I am at my home, then my main interests are my kids. I spend a lot of time with my kids educating them about different aspect of life, nature and others. I always encourage them toward good works and help them in their study and play different kinds of sport with them because sports is very important factor anyone's life. I also enjoy romantic poetry reading and writing. In addition to that, I enjoy listening to music, travelling to new places, swimming, camping and fishing.

3

**SF Match**
**Central Application Service**
**Ophthalmology Residency**

Name: Asmaa Ali

ApplicantID: 13407

**Career Objectives:**

I am looking forward to complete my residency training in ophthalmology and join academic institute where I can pursue my career involved in patient care, research as clinical scientist, resident education and community service. Clinician scientists have a unique role in ophthalmology. Some identify clinically relevant questions that they seek to answer in the laboratory.

**Specialty elective(s) and related activities:**

**Harkness Eye Institute:**
I spent two month with Dr. Peter Gouras in his lab, where I learned about retina and wet lab techniques.

**Diabetic Screening Program:**
During my internship in Alexandria University, we used to screen people for diabetic retinopathy at public schools, mosques and churches in Egypt.

**Honors, Awards and Achievements:**

The Glaucoma Foundation:Active funding Funded for studying exfoliating glaucoma. "AntiGlycan Antibody Immunoprofiles as Biomarkers in Early Detection of Exfoliation Syndrome"

American Academy of Ophthalmology 2005:
Active Member of American Academy of Ophthalmology

Alexandria University School of Medicine, Egypt, 1994 to 1996:

Honor Degree: Senior Years- November 1994.
Scholarship: November 1994-October 1988.

4

**SF Match**
**Central Application Service**
**Ophthalmology Residency**

Name: Arans Ali

Applicant ID: 13407

**Autobiographical Sketch:**

I have always believed that success is a type of obsession, an obsession with perfection and the ability to turn a weakness into strength and criticism into perfection. My passion for humanity and science has started long ago during my undergraduate education. This made me determined to go to medical school. I was eager to master knowledge about the human body, and focused especially on the eye. My interest in ophthalmology continued with the completion of my master's degree in ophthalmology and visual science at Alexandria University in Egypt. This was followed by four clinical fellowships in the United States in neuro-ophthalmology, medical retina, and two fellowships in uveitis and ocular immunology. During these fellowships, I produced ten peer-reviewed articles, four abstracts and four textbook chapters.

Through my school years, I became increasingly fascinated with the complexity of the eyeball, the visual system and how an Ophthalmologist can influence an individual's life. I read more about the history of ophthalmology and about previous scientists who contributed to the field. I have been inspired by Ibn al-Haytham, an Arab scientist who wrote extensively on optics and the anatomy of the eye in his Book of Optics. I am also impressed by other many physician scientists such as William Horatio Bates Creator of the unorthodox Bates Method, credited for being the founder of the Natural Vision Improvement movement, Charles Kelman who developed the ultrasound and mechanized irrigation and aspiration system for phacoemulsification, first allowing cataract extraction through a small incision and Charles Schepens "Father of modern retinal surgery".

Eyesight is truly a gift. I vividly recall observing my newborn son as both a father and as a scientist, and looking at him with his eyes covered during phototherapy. It was very clear to me how much this eye coverage was annoying him, and fortunately it would only be necessary for just a few hours. Many of us are given this gift of eyesight from birth, but many others are not. For others eyesight may fade over the years and others may have it taken away at some point in life.

If I may pull out my crystal ball and predict the future, I foresee the day when permanent loss of vision becomes a rare event. I envision a world without blindness, enabling a more active contribution to the community as well as a better quality of life for a significant proportion of people. I began participation in the New Avenues for Youth's Mission (NAFY) program offering services that empower homeless youths to exit street life. One of these services is medical care, which is where I contribute.

In 2011, I joined New York University Langone Medical center working as a research scientist where I have the opportunity to interact with different departments and to learn from many senior scientist in different fields. I currently joined New York Medical College and working with Dr. Sansar Sharma on many basic and transitional science projects. We are studying the impact of sleeve gastrectomy on the course of diabetic retinopathy. We submitted a grant to Ethicon and Bariatric Surgery Society to study the impact of bariatric surgery on the diabetic retinopathy.

My first and foremost goal is to acquire excellent academic and clinical knowledge of general ophthalmology that will allow me to pursue my intentions and become a well-rounded ophthalmologist. Toward such a goal, I am applying for the residency in Ophthalmology in your superb program. Solid foundations of clinical and surgical training in your residency program are essential for becoming an ophthalmologist. Accomplishment of this goal through completion of my ophthalmology residency training in your program will be a corner stone in my career as it will help me to proceed for the next step, which is proceeding for a vitreoretinal surgical fellowship. I am also planning to register for ORBIS programs that focus on the prevention of blindness and the treatment of blinding eye diseases in developing countries after finishing my residency training. In closing, this outstanding clinical and surgical exposure will help me to treat and saving eye diseases world wide through ophthalmology mission trips to different countries.

**SF Match**
**Central Application Service**
**Ophthalmology Residency**

Name: Amro Ali

ApplicantID: 13407

---

**Research activities, papers and/or additional information:**
*List all authors and complete reference in chronological order.*

**Grant Support:**
1. The Glaucoma Foundation 2014: Funded for studying exfoliating glaucoma. ( Active funding) "Anti-Glycan Antibody Immunoprofiles as Biomarkers in Early Detection of Exfoliation Syndrome". Role is the grant: co –Principle Investigator.
2. Impact of Laparoscopic Sleeve Gastrectomy on the Course of Diabetic Retinopathy. Grant is submitted to Ethicon. Role in the grant: Principle Investigator.
3. Impact of Volatile Anesthetics on Retinal Pigment Epithelia Cells. Grant is submitted Society of Anesthesia and Sleep Medicine (SASM). Role in the grant: Co- Principle Investigator.

**Publications:**
1. Ali A, Ku JH, Suhler EB, Choi D, Rosenbaum JT. The course of retinal vasculitis. Br J Ophthalmol. 2014 Jun;98(6):785-9. 2. Ali A, Rosenbaum JT. TINU (tubulointerstitial nephritis uveitis) can be associated with chorioretinal scars. Ocul Immunol Inflamm. 2014 Jun;22(3):213-7. 3. Ku JH, Ali A, Suhler EB, Choi D, Rosenbaum JT. Characteristics and visual outcome of patients with retinal vasculitis. Arch Ophthalmol. 2012 Oct;130(10):1261-6. 4. Ali A, Steven T Bailey. CMV Retinitis. Joseph Maguire ,Ann Murchison, Edward Jaeger. Wills Eye Institute 5-Minute Ophthalmology Consult .1st ed. Lippincott Williams & Wilkins 2012 5.Ali A, Rosenbaum JT, What Is the Single Most Important Source of Diagnostic Leads for Uncovering a Diagnosable Cause of Uveitis? Foster, C. Stephen, Opremcak, E. Mitchel, Hinkle, David. Curbside Consultation in Uveitis: 49 Clinical Questions.1st ed. Slack Inc 2012-02-15, 2012 6. Rosenbaum JT, Ku J, Ali A, Choi D, Suhler EB. Patients with retinal vasculitis rarely suffer from systemic vasculitis. Semin Arthritis Rheum. 2012 Jun;41(6):859-65. doi: 0.1016/j.semarthrit.2011.10.006. Epub 2011 Dec 15. PubMed PMID: 22177167; 7. Ali A, Rosenbaum JT. Use of methotrexate in patients with uveitis. Clin Exp Rheumatol. 2010 Sep-Oct;28(5 Suppl 61):S145-50. Epub 2010 Oct 26. Review. 8. Landa G and Ali A et al, Comparative study of intravitreal bevacizumab (Avastin) versus ranibizumab (Lucentis) in the treatment of neovascular age-related macular degeneration. Ophthalmologica. 2009;223(6):370-5. doi: 10.1159/000227783. Epub 2009 Jul 8. 9. Samson CM, Ali A, Stephen Foster. EMedicine, Birdshot Retinopathy. 2009 10. Ali A, Samson CM. Seronegative spondyloarthropathies and the eye. Curr Opin Ophthalmol. 2007 Nov;18(6):476-80. Review.

**Posters/Abstracts:**
1. Rituximab in the Treatment of Refractory Scleritis and Non-infectious Orbital Inflammation: 24 Week Outcomes from a Phase I/II Prospective, Randomized Study. May 04, 2011.ARVO 2011. Nicholas J. Butler, Ali J, Justine R. Smith, James T. Rosenbaum, Eric B. Suhler. 2. Anterior Uveitis Prevalence and Activity in Women of Different Reproductive Life Stages R.H. McGlynn, Jr., CM. Samson, A. Ali, S.R. Kedhar, W. Amde, J. Shulman. Ophthalmology, New York Eye and Ear Infirmary, New York, NY. Poster Session 113. Clinical Ocular Inflammatory Disease. ARVO 2009. 3. Chronic Cystoid Macular Edema (CME) Secondary to Uveitis K.M. Narayana, S. Dorairaj, S. Kedhar, P. Latkany, A. Ali, C. Samson. Uveitis/Ophthalmology. New York Eye and Ear Infirmary, New York, NY Poster Session 226. Clinical Ocular Inflammatory Disease II.ARVO 2009 4. Intravitreal Injection of Kenalog as an Adjunctive Treatment for Uveitis Patient Undergoing Cataract Surgery D. Yin, A. Ali, M.C. Samson. Ophthalmology, New York Eye and Ear Infirmary, New York, NY Poster Session 226. Clinical Ocular Inflammatory Disease II.ARVO 2009.

---

I certify that the information in this application is true and complete and that I have not withheld information that might significantly affect my qualifications for residency training. I understand that any misrepresentation in this application and its accompanying documents may be cause for immediate termination of my application process or future employment. I authorize any training program that receives this application to contact any or all of my former employers, educational institutions and/or other persons or organizations who may have information relevant to my application. I understand that any information obtained will be treated as confidential information. I authorize SFMatch to use any information I have provided to SFMatch in any study approved by SFMatch, provided that no information clearly and uniquely identifiable with me is disclosed in reports resulting from such study. I intend to complete all prerequisites before the start of my residency training. I understand that any contract or match result will be void if I do not satisfactorily complete my prerequisite training or if I fail to meet other requirements that have been explicitly stated to all applicants. I will formally withdraw from this match prior to the rank list due date if I accept any position outside of this match before the due date. If I match through SF Match, I will withdraw from all other competitive matches in post-graduate medicine.

Signature: Amro Ali

Date: 09/21/2016

6

Amro Ali (ID: 13407)
7 Hegeman Ave
Apt 20D
Brooklyn, NY, 11212, United States
Phone: 3476235406
Cell: 3476235406

RE: College transcripts

Dear Chairperson,

We do not have in our system a college degree between high school and medical school.
Thus, College transcripts are not available.

Amro Ali.

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

------------------------------------------ X

AMRO ALI, M.D.,

                 Complainant,

    -against-

WESTCHESTER MEDICAL CENTER and
NEW YORK MEDICAL COLLEGE,

                 Respondents.

------------------------------------------ X

EEOC Charge No. 520-2019-02246

**ANSWER TO COMPLAINT
OF DISCRIMINATION**

Westchester Medical Center ("WMC") and New York Medical College ("NYMC") (collectively the "Respondents") by their attorneys, Meyer, Suozzi, English & Klein, P.C. hereby submits its Answer to the Charge of discrimination filed by complainant Amro Ali, M.D. ("Dr. Ali") on April 22, 2019 as follows:

    1.      Respondents deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1.

    2.      Respondents deny the allegations contained in paragraph 2.

    3.      Respondents deny the allegations contained in paragraph 3.

    4.      Respondents admit that the USMLE is not required by the Federal State Medical Board or the New York State Medical Board prior to commencing a residency program and respectfully refer the EEOC to all rules and regulations pertaining to both Boards and the WMC documents referred to in paragraph 4 for the true meaning and content thereof.

    5.      Respondents deny the allegations contained in paragraph 5.

    6.      Respondents deny the allegations contained in paragraph 6.

    7.      Respondents deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 and specifically deny that Dr. Wandel

expressed to Dr. Sharma and Dr. Ali that WMC needed to produce more research and publications and in exchange for Dr. Ali's research and publications he would obtain a residency position.

8.      Respondents deny the allegations contained in paragraph 8.

9.      Respondents admit the allegations contained in paragraph 9 to the extent that certain papers were published, Dr. Ali did some work on a textbook and IRB and that he attempted, unsuccessfully, to apply for grants and specifically deny having knowledge or information sufficient to form a belief as to the allegation that Dr. Ali expected, based on WMC-NYMC representations, that the institution would grant him a residency.

10.     Respondents deny the allegations contained in paragraph 10 except admit that in November 2016, Dr. Ali applied to the San Francisco Match and was formally interviewed at WMC.

11.     Respondents deny the allegations contained in paragraph 11.

12.     Respondents deny the allegations contained in paragraph 12 except admit that in April 2018 Dr. Ali passed the Step 3 exam.

13.     Respondents deny the allegations contained in paragraph 13.

14.     Respondents deny the allegations contained in paragraph 14.

15.     Respondents deny the allegations contained in paragraph 15 except admit that on September 5, 2018, Dr. Ali formally presented his claims to WMC's attorney, Barbra Krakowski.

16.     Respondents deny the allegations contained in paragraph 16.

17.     Respondents deny the allegations contained in paragraph 17.

18.     Respondents deny the allegations contained in paragraph 18.

19.     Respondents deny the allegations contained in paragraph 19.

2

20.     Respondents deny the allegations contained in paragraph 20 and aver that Claimant was never employed by WMC and NYMC.

21.     Respondents deny the allegations contained in paragraph 21.

22.     Respondents deny the allegations contained in paragraph 22.

23.     Respondents deny the allegations contained in paragraph 23.

24.     Respondents deny the allegations contained in paragraph 24 except admit that Dr. Ali first applied in November 2015, one year before the San Francisco Match, for an advanced position at PGY-3.

25.     Respondents admit the allegations contained in paragraph 25 except deny that that Qatari resident was also required to pass the Step 3 exam.

26.     Respondents deny the allegations contained in paragraph 26.

27.     Respondents deny the allegations contained in paragraph 27.

28.     Respondents deny the allegations contained in paragraph 28.

29.     Respondents deny the allegations contained in paragraph 29.

WHEREFORE, Respondents respectfully request that the instant charge be dismissed in its entirety.

Dated:  Garden City, New York
        June 10, 2019

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By: _____
     Paul F. Millus
     990 Stewart Avenue, Suite 300
     P.O. Box 9194
     Garden City, New York  11530-9194
     (516) 592-5933
     pmillus@msek.com
     *Attorneys for Respondents*

3

4261543