# EXHIBIT 26

1

2    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
3    --------------------------------------X

4    AMRO ALI, M.D.,

5                   Plaintiff,

6             vs.

7    WESTCHESTER MEDICAL CENTER and
     NEW YORK MEDICAL COLLEGE,
8
                   Defendants.
9
     --------------------------------------X
10

11

12

13            DEPOSITION OF MICHELLE HODGE

14             VIA VIDEO TELECONFERENCE

15               Hawthorne, New York

16             Friday, October 16, 2020

17

18

19

20

21

22

23

24   Reported by:
     JOAN WARNOCK
25   JOB NO. J6089253B



```
 1
 2
 3                    October 16, 2020
 4                    1:05 p.m.
 5
 6        Deposition of MICHELLE HODGE, held
 7   via remote video teleconference in
 8   Hawthorne, New York, before Joan
 9   Warnock, a Notary Public of the State of
10   New York.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```



```
1
2   A P P E A R A N C E S:
3   (ALL PARTIES APPEARING VIA VIDEO
4   TELECONFERENCE)
5
6        ROBERT W. SADOWSKI PLLC
7        Attorneys for Plaintiff
8             800 Third Avenue, 28th Floor
9             New York, New York  10022
10       BY:   ROBERT W. SADOWSKI, ESQ.
11
12       MEYER SUOZZI ENGLISH & KLEIN P.C.
13       Attorneys for Defendants
14            990 Stewart Avenue
15            Garden City, New York  11530
16       BY:   PAUL MILLUS, ESQ.
17
18
19  ALSO PRESENT:
20       AMRO ALI
21       NEWMAN HOFFMAN
22
23
24
25
```



```
 1                   M. Hodge
 2   M I C H E L L E   H O D G E, called as a
 3       witness, having been duly sworn by a
 4       Notary Public, was examined and
 5       testified as follows:
 6            COURT REPORTER:  Please state your
 7         name and address for the record.
 8            THE WITNESS:  Michelle Hodge,
 9        260 West Street, Apartment 2-C, Mount
10        Kisco, New York  10549.
11   EXAMINATION BY
12   MR. SADOWSKI:
13        Q.   Good afternoon, Ms. Hodge.  My name
14   is Robert Sadowski.  I represent Dr. Amro Ali
15   in a litigation against Westchester Medical
16   Center and New York Medical College.
17            Have you ever been deposed before?
18        A.   I have not.
19        Q.   Okay.  A couple of basic rules, the
20   most important of which is you must wait
21   until I finish my question before you speak,
22   because the court reporter can't take down
23   two people talking at the same time.  Also, I
24   see you just nodded your head.  For the
25   record, we have to have verbal answers to
```



```
 1                    M. Hodge
 2   questions, so shaking your head or nodding or
 3   uh-huh, um-hmm doesn't work.  And I'll try to
 4   catch if that happens, but try to remember to
 5   make your responses verbal.  Okay?
 6        A.   Okay.
 7        Q.   At any time you want to take a
 8   break, just let me know and we'll do that.  I
 9   just ask that if there's a question pending,
10   you answer the question before the break.  If
11   at any time you don't understand my question
12   or need it rephrased, please let me know, and
13   I'll be happy to do that.
14             Do you understand the instructions
15   I've given you?
16        A.   Yes.
17        Q.   Where are you employed, Ms. Hodge?
18        A.   Westchester Medical Center in
19   Valhalla.
20        Q.   And what is your job there?
21        A.   I'm the Department of Ophthalmology
22   coordinator.
23        Q.   And who is your supervisor?
24        A.   Kelley Hutcheson.
25        Q.   And how long have you had that
```



                        M. Hodge

 1
 2   position?
 3         A.   Two and a half years.
 4         Q.   And before that were you employed?
 5         A.   Yes.
 6         Q.   And where were you employed?
 7         A.   Antioch Baptist Church in Bedford
 8   Hills.
 9         Q.   And what was your job there?
10         A.   Church secretary.
11         Q.   Can you tell me generally your
12   duties and responsibilities as the
13   coordinator for the Department of
14   Ophthalmology?
15         A.   Sure.  I work directly with
16   Dr. Hutcheson in an administrative capacity.
17   I also do marketing for the department and
18   plan events.
19         Q.   What are the administrative duties
20   and responsibilities that you have?
21         A.   Scheduling meetings, scheduling
22   phone calls, doing expenses.
23         Q.   Do you attend any department
24   meetings?
25         A.   I do.



1                    M. Hodge

2        Q.   And what role do you have when you

3    attend a department meeting?

4        A.   Most of the time I'm there just as

5    an attendee to -- as a department liaison.

6        Q.   And as a department liaison

7    attendee, do you take notes?

8        A.   Yes.

9        Q.   Do you take notes that are

10   handwritten or typed?

11       A.   Handwritten.

12       Q.   Handwritten.  What do you do, if

13   anything, with your handwritten notes after

14   the meeting?

15       A.   They're just kept in a notebook.

16       Q.   And where is that notebook kept?

17       A.   On my desk.

18       Q.   Do you know who Dr. Sharma is?

19       A.   Yes.

20       Q.   How do you know him?

21       A.   I've met him several times.  I

22   think he's an instructor at the New York

23   Medical College.

24       Q.   Have you ever attended any meetings

25   with him?



```
1                      M. Hodge
2         A.    I think just grand rounds.
3         Q.    What do you mean by grand rounds?
4         A.    Grand rounds is a monthly lecture
5    series sponsored by the department.
6         Q.    Have you ever had any meetings with
7    Dr. Sharma, Dr. Hutcheson, Dr. Bierman, and
8    Dr. Wandel?
9         A.    No.  Dr. Sharma was -- no.
10        Q.    If I told you that Dr. Sharma
11   testified that you were at a meeting in
12   June 2018 attended by Dr. Hutcheson,
13   Dr. Wandel, Dr. Bierman, and Dr. Sharma,
14   would that at all refresh your recollection?
15        A.    I do not recall that meeting.
16        Q.    Has anyone requested you to search
17   your notebooks or computer files for emails,
18   notes, or memos regarding Dr. Ali?
19        A.    Yes.
20        Q.    And who made that request to you?
21        A.    I don't recall.  It was a while
22   ago.
23        Q.    Do you know if you spoke with
24   Dr. Hutcheson about that request?
25        A.    I don't recall whether I spoke to
```



```
 1                     M. Hodge
 2    her about it.
 3         Q.   Did you retrieve any emails, memos,
 4    notes, that you had in connection with
 5    Dr. Ali?
 6         A.   Yes.
 7         Q.   And what did you retrieve?
 8         A.   Just that, emails, memos, anything
 9    on my computer.
10         Q.   Did you also check the notebook
11    that you kept on your desk?
12         A.   Yes.
13         Q.   And did you find any meeting notes
14    in that notebook relating to Dr. Ali?
15         A.   No.
16         Q.   The notebook that you maintain,
17    what's the purpose for maintaining the
18    notebook?
19         A.   To remind me of meeting
20    discussions.
21         Q.   Do you share those notes with
22    anyone?
23         A.   No.
24         Q.   Has anyone ever asked to see your
25    book of meeting notes?
```



```
 1                       M. Hodge
 2        A.    No.
 3        Q.    When you say you keep it on your
 4   desk, is it in view to anyone who passes by
 5   your desk?
 6        A.    No.  My office is locked.
 7        Q.    Okay.  I may have asked you this
 8   and I apologize.  Has anyone ever asked to
 9   review your notebook?
10        A.    No.
11        Q.    Have you taken out any notes from
12   your notebook and done something with them?
13        A.    Yes, I have.
14        Q.    On what occasion would you have to
15   do that?
16        A.    If I've transcribed the notes and
17   typed them, then I don't need the handwritten
18   notes.
19        Q.    I see.  And when you have an
20   occasion to transcribe the notes, why would
21   you transcribe notes?
22        A.    For an official record.
23        Q.    And who would make the
24   determination that certain notes should
25   become an official record?
```



```
 1                    M. Hodge
 2        A.    My supervisor.
 3        Q.    That would be Dr. Hutcheson?
 4        A.    Yes.
 5        Q.    Would you transcribe notes for any
 6   other reason other than at Dr. Hutcheson's
 7   request?
 8        A.    Not -- no.
 9        Q.    The notes that you transcribe, what
10   do you do with the notes once they are
11   transcribed?
12        A.    The handwritten notes?
13        Q.    Yes.
14        A.    They're shredded.  They're put in
15   the shred box.
16        Q.    Is that your policy with all notes
17   that you transcribe?
18        A.    Yes.
19        Q.    How often are you asked to
20   transcribe notes?
21        A.    Very rarely.
22        Q.    I'm going to show you now what has
23   been -- let me see if I can get it up.  Okay.
24   Can you see what I have marked as Bierman
25   Exhibit 3?  And let me make it a little
```



```
 1                    M. Hodge

 2    larger.

 3              Have you seen this document before?

 4         A.   Yes.

 5         Q.   And the title is "Meeting Minutes,"

 6    the date, July 20, 2018, the time twelve

 7    noon.  And the attendees are listed, and your

 8    name is there as note taker.  Did you attend

 9    this meeting as a note taker?

10         A.   Yes.

11         Q.   And is this your transcription of

12    the notes you took at that meeting?

13         A.   Yes.

14         Q.   And is this transcription an

15    accurate rendition of your notes taken at

16    that meeting?

17         A.   To the best of my knowledge, yes.

18         Q.   Do you recall was there anything in

19    your notes that you did not include in this

20    transcription, if you remember?

21         A.   I don't remember, but I would have

22    to say no.

23         Q.   So is it your understanding that

24    this is a comprehensive transcription of the

25    notes you took of the meeting on July 20th,
```



```
 1                    M. Hodge

 2    2018?

 3              MR. MILLUS:  Objection as to form.

 4         You may answer.

 5         A.   Yes.

 6         Q.   Do you know why Dr. Hutcheson asked

 7    you to transcribe these notes?

 8         A.   Yes.

 9         Q.   And why is that?

10         A.   To make them an official record.

11         Q.   When you say official record, what

12    does that mean to you?

13         A.   She wanted an accurate description

14    of the meeting discussion.

15         Q.   After you transcribed these notes,

16    did any of the attendees review the notes?

17         A.   Yes.

18         Q.   I'm sorry.  I misspoke.  Review the

19    transcription.

20         A.   Yes.

21         Q.   Who was that?

22         A.   Dr. Hutcheson and I believe

23    Dr. Wandel.

24         Q.   And did they have any comments or

25    corrections after their review of the
```



```
 1                    M. Hodge
 2  transcription?
 3       A.   I don't entirely recall.
 4       Q.   Do you recall ever making any
 5  modifications to your transcription?
 6       A.   I don't entirely recall.  Sorry.
 7       Q.   Okay.  If any of those individuals
 8  you mentioned had reviewed the transcription
 9  and made notes or comments or edited it,
10  would you have saved those review notes?
11       A.   Normally I only save the final to
12  save space.
13       Q.   I see.  Do you know as you sit here
14  today whether you made any revisions in this
15  transcription after you first transcribed it?
16       A.   I honestly can't recall.
17       Q.   Okay.  In connection with the
18  request made to you -- well, let me ask you.
19  What request was made to you to look for any
20  documents relating to Dr. Ali?
21       A.   Can you rephrase that.
22       Q.   Sure.  That wasn't a pretty
23  question.  Who is it who asked you to look in
24  your computer and notes for any documents
25  relating to Dr. Ali?
```



```
 1                      M. Hodge

 2          A.    I don't remember.  It was a long

 3    time ago.

 4          Q.    You did do a search of your

 5    computer for emails or items relating to

 6    Dr. Ali; correct?

 7          A.    Yes.

 8          Q.    And you did review your notebook to

 9    see if there were any notes relating to

10    Dr. Ali; correct?

11          A.    Yes.

12          Q.    In your notebook were there any

13    handwritten notes relating to Dr. Ali?

14          A.    No.

15          Q.    Does Dr. Hutcheson maintain a copy

16    of your notes or notebook?

17          A.    No.

18          Q.    Other than these meeting minutes,

19    what other documents did you recover from

20    your computer or notes or files relating to

21    Dr. Ali?

22          A.    Mostly emails.  Emails.

23          Q.    And to whom did you produce those

24    emails?

25          A.    Is that the same as asking who
```



1                    M. Hodge

2    requested them?

3        Q.   No, because one person could

4    request them and you could have given them to

5    another person.

6        A.   No.  I don't recall who I gave them

7    to.

8        Q.   In that process of reviewing your

9    notes and emails, did Dr. Hutcheson assist

10   you at all?

11       A.   No.

12       Q.   Did she give you any direction in

13   connection with your search for documents

14   relating to Dr. Ali?

15       A.   Only that I should comply.

16       Q.   Were those the words she used?

17       A.   I don't remember the exact words.

18       Q.   Did she ask you or did she tell you

19   she wanted to review what you found before it

20   was turned over to anyone?

21       A.   No.

22       Q.   Do you ever recall being in a

23   meeting room with -- well, let me ask you

24   this.  Is there a particular conference room

25   that you use when you have meetings?



1                     M. Hodge

2        A.   No.

3        Q.   There aren't designated conference

4   rooms for meetings in your department?

5        A.   The department does not have a

6   designated conference room where -- we have

7   to reserve a room in the hospital.

8        Q.   I see.  And is it your job to make

9   those meeting room reservations?

10        A.   Normally, yes.

11        Q.   Do you keep a record of the meeting

12   room reservations that you make?

13        A.   It would be in my calendar, my

14   email.

15             MR. SADOWSKI:  I'm going to ask the

16        witness to produce her calendar for

17        June 2018, and particularly I'm looking

18        for the dates on or around June 22nd,

19        2018.

20        Q.   Do you have that calendar in a hard

21   copy, or is it on your computer?

22        A.   It's on my computer.

23        Q.   Are you able to pull that up for

24   the period June 2018?

25        A.   I can try.  I can't do it now.



1                    M. Hodge

2        Q.   Okay.  Understood.

3             MR. SADOWSKI:  If you could do that

4        and produce it to Mr. Millus for his

5        review.

6             THE WITNESS:  Yes.

7        Q.   To whom do you make a request for a

8    meeting room reservation?

9        A.   It's all electronic.

10       Q.   So there's no person who is

11   responsible for responding to a request for a

12   meeting room reservation?

13       A.   Not one single person, no.  It

14   depends on whose department has the room.

15       Q.   I see.  How long in advance do you

16   have to request a conference room?

17       A.   There's no set time.

18       Q.   When you set up a meeting, do you

19   send an email to the potential attendees of

20   the meeting?

21       A.   Yes.

22       Q.   So if there was going to be a

23   meeting with Drs. Bierman, Wandel, Hutcheson,

24   and Sharma, would you send an email to each

25   of them stating the date, time, and place of



```
 1                   M. Hodge
 2    the meeting?
 3         A.   Yes.
 4              MR. SADOWSKI:  I'm going to ask you
 5         to search for any emails reserving a
 6         conference room on or around June 22nd,
 7         2018, and the emails to the attendees
 8         for that meeting, and in particular if
 9         it's to Drs. Sharma, Bierman, Hutcheson
10         and Wandel.
11              MR. MILLUS:  That's fine.  I'll ask
12         the witness to do so and correspond with
13         me and convey her findings.
14         Q.   Do you recall the meeting on
15    July 20th, 2018?
16         A.   Yes.
17         Q.   What do you recall about the
18    meeting?
19         A.   Just that it happened.
20         Q.   Can you describe for me how the
21    meeting ended?
22         A.   I don't recall how the meeting
23    ended.
24         Q.   Was there anything remarkable about
25    the ending of the meeting that sticks out in
```



```
 1                      M. Hodge
 2   your mind?
 3              MR. MILLUS:  Objection to the form.
 4        A.   Remarkable how?
 5        Q.   Well, remarkable that you would
 6   remember or think it should be included in
 7   the notes?
 8        A.   I don't recall for sure.
 9        Q.   Do you remember the order of the
10   individuals as they left the meeting?
11        A.   I do not.
12        Q.   Do you recall speaking with Dr. Ali
13   at the end of the meeting?
14        A.   Not for certain.
15        Q.   You don't recall shaking his hand?
16        A.   I don't recall for certain.
17        Q.   Did Dr. Ali at any time during the
18   meeting raise his voice?
19        A.   Not that I can recall.
20        Q.   Have you ever known Dr. Ali to
21   raise his voice?
22        A.   I don't know Dr. Ali personally.
23        Q.   How often have you interacted with
24   Dr. Ali?
25        A.   Via email and this meeting.
```



```
 1                    M. Hodge
 2        Q.   Did you have an understanding of
 3   what Dr. Ali's position at New York Medical
 4   College was?
 5        A.   No.
 6        Q.   Did you and Dr. Hutcheson ever
 7   discuss Dr. Ali?
 8        A.   Not that I can recall.
 9             MR. SADOWSKI:  All right.  Let me
10        take a five-minute break, and then I
11        should be able to wrap up.
12             MR. MILLUS:  Very well.  Thank you.
13             (Recess taken from 1:34 p.m. to
14        1:42 p.m.)
15             MR. SADOWSKI:  Ms. Hodge, I was
16        asking you about conference room
17        reservations and emails to attendees for
18        the period of June.  I would like to
19        expand that to include July, the month
20        of July 2018, too.
21             THE WITNESS:  Okay.
22             MR. SADOWSKI:  Thank you.
23             MR. MILLUS:  That's fine.
24        Q.   Do you know an ophthalmology
25   resident from Qatar?  And I will not
```



```
 1                    M. Hodge
 2    pronounce his last name correctly.  His name
 3    is Samir Al Sweiki?
 4         A.   Yes.
 5         Q.   In your office as the
 6    administrator, do you keep records relating
 7    to the residents?
 8         A.   No.
 9         Q.   Where are records relating to the
10    residents kept?
11         A.   With the --
12              MR. MILLUS:  Let me just object as
13         to form.  When you say records, is there
14         a way that you can define that a little
15         bit better, Rob, just so I can
16         understand it?
17              MR. SADOWSKI:  Sure.
18         Q.   What I'm asking specifically is if
19    the ophthalmology department keeps records of
20    the progress of residents such as the
21    requirement to pass the licensing exam Step 3
22    during the residency?
23         A.   That's not part of my job.
24         Q.   Who in the department keeps track
25    of that requirement, if you know?
```



```
 1                    M. Hodge
 2        A.    The residency program coordinator.
 3        Q.    And who is that?
 4        A.    Donna Hemmings.
 5        Q.    Do you have any information at all
 6   as to whether Dr. Al Sweiki has passed Step 3
 7   of his licensing exam?
 8        A.    I do not.
 9        Q.    So to establish that information, I
10   would have to ask Donna Hemmings?
11        A.    Yes.
12             MR. SADOWSKI:  Okay.  Thank you.  I
13        have no other questions.
14             MR. MILLUS:  I have no questions.
15             (Time noted:  1:45 p.m.)
16
17
18
19                    _____
20                    MICHELLE HODGE
21
22   Subscribed and sworn to before me
23   this ____ day of _____, 2020.
24
25   _____
```



1

2              C E R T I F I C A T E

3   STATE OF NEW YORK          )

4                        : ss.

5   COUNTY OF WESTCHESTER      )

6

7         I, JOAN WARNOCK, a Notary Public

8      within and for the State of New York, do

9      hereby certify:

10        That MICHELLE HODGE, the witness

11     whose deposition is hereinbefore set

12     forth, was duly sworn by me and that

13     such deposition is a true record of the

14     testimony given by the witness.

15        I further certify that I am not

16     related to any of the parties to this

17     action by blood or marriage, and that I

18     am in no way interested in the outcome

19     of this matter.

20        IN WITNESS WHEREOF, I have hereunto

21     set my hand this 17th day of October,

22     2020.

23     _____

24

25     JOAN WARNOCK



```
 1

 2   ----------------- I N D E X ----------------

 3   WITNESS              EXAMINATION BY        PAGE

 4   M. Hodge          Mr. Sadowski              4

 5

 6   ------------ INFORMATION REQUESTS -----------

 7   DIRECTIONS:

 8   RULINGS:

 9   TO BE FURNISHED:

10   REQUESTS:  17:15, 19:4, 21:15

11   MOTIONS:

12

13   ----------------- EXHIBITS ----------------

14                      (None)

15

16

17

18

19

20

21

22

23

24

25
```



1           DEPOSITION ERRATA SHEET

2

3   Our Assignment No.:  J6089253B

4   Case Caption:  Amro Ali, M.D. v. Westchester

5   Medical Center

6

7      DECLARATION UNDER PENALTY OF PERJURY

8

9           I declare under penalty of perjury

10  that I have read the entire transcript of my

11  Deposition taken in the captioned matter or

12  the same has been read to me, and the same is

13  true and accurate, save and except for

14  changes and/or corrections, if any, as

15  indicated by me on the DEPOSITION ERRATA

16  SHEET hereof, with the understanding that I

17  offer these changes as if still under oath.

18                   _____

19                        Michelle Hodge

20  Subscribed and sworn to on the _____ day of

21  _____, 20 _____ before me.

22  _____

23  Notary Public,

24  in and for the State of

25  _____.



```
 1          DEPOSITION ERRATA SHEET

 2    Page No.____Line No.____Change to:_____

 3    _____

 4    Reason for change:_____

 5    Page No.____Line No.____Change to:_____

 6    _____

 7    Reason for change:_____

 8    Page No.____Line No.____Change to:_____

 9    _____

10    Reason for change:_____

11    Page No.____Line No.____Change to:_____

12    _____

13    Reason for change:_____

14    Page No.____Line No.____Change to:_____

15    _____

16    Reason for change:_____

17    Page No.____Line No.____Change to:_____

18    _____

19    Reason for change:_____

20    Page No.____Line No.____Change to:_____

21    _____

22    Reason for change:_____

23

24    SIGNATURE:_____DATE:_____

25              Michelle Hodge
```



```
 1          DEPOSITION ERRATA SHEET

 2   Page No.____Line No.____Change to:_____

 3   _____

 4   Reason for change:_____

 5   Page No.____Line No.____Change to:_____

 6   _____

 7   Reason for change:_____

 8   Page No.____Line No.____Change to:_____

 9   _____

10   Reason for change:_____

11   Page No.____Line No.____Change to:_____

12   _____

13   Reason for change:_____

14   Page No.____Line No.____Change to:_____

15   _____

16   Reason for change:_____

17   Page No.____Line No.____Change to:_____

18   _____

19   Reason for change:_____

20   Page No.____Line No.____Change to:_____

21   _____

22   Reason for change:_____

23

24   SIGNATURE:_____DATE:_____

25            Michelle Hodge
```

