UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
AMRO ALI, M.D.,                        :          19cv8324 (DLC)
                                       :
                      Plaintiff,       :          OPINION AND ORDER
            -v-                        :
                                       :
WESTCHESTER MEDICAL CENTER and NEW     :
YORK MEDICAL COLLEGE,                  :
                                       :
                      Defendants.      :
                                       :
-------------------------------------- X

APPEARANCES:

For the plaintiff:
Robert Sadowski
Sadowski Katz, LLP
800 Third Ave, 28th Floor
New York, NY 1002

For the defendants
Paul Millis
Daniel Rinaldi
Meyer, Suozzi, English & Klein, P.C.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, NY 11530

DENISE COTE, District Judge:

      Amro Ali, M.D. ("Ali") claims that Westchester Medical
Center ("WMC") and New York Medical College ("NYMC")
discriminated against him on the basis of his age and national
origin when they failed to admit him to a medical residency
program in July 2018.  The defendants have moved for summary
judgment.  For the reasons that follow, the motion is granted.

## Background

The following facts are undisputed or taken in the light most favorable to Ali.  Ali was born in Egypt in 1971.  Ali received his medical degree from Alexandria University in Alexandria, Egypt, in 1995.  Ali practiced general ophthalmology in Egypt until 1999 and attended a 6-month research fellowship at Harkness Eye Institute, Columbia Presbyterian Medical Center in New York in 1999.  He then returned to Egypt, received a Master's degree in 2001, and completed an Ophthalmology residency at Alexandria Eye Center between 2000 and 2002.

Ali moved to the United States in 2002.  Between 2002 and 2015, Ali participated in an internship and four clinical Ophthalmology fellowships.  Ali applied unsuccessfully to several medical residency programs during this time period.  Ali worked as an Associate Research Scientist at New York University ("NYU") from 2011 to 2015.

In 2015, Ali met Dr. Sansar Sharma, a Ph.D. in Physiology and professor of Ophthalmology at NYMC.  NYMC is a non-profit American medical school that shares a campus with WMC in Westchester County, New York.  Ali and Sharma discussed Ali joining NYMC in a volunteer research capacity to help NYMC boost its scholarly activities.  Around this time, NYMC had been placed on academic probation by the Accreditation Council for

Graduate Medical Education ("ACGME") because NYMC did not have
sufficient "scholarly activities."

Ali provided his work history and test scores to Sharma.
Sharma promised Ali a position in NYMC's residency program if
Ali performed research for NYMC.

Leaving his paid employment at NYU, Ali started
volunteering at NYMC in or around December 2015, and he
officially joined NYMC's faculty in February 2016 as a voluntary
faculty member.  Ali did not receive a salary for any of his
work at NYMC and worked part-time elsewhere to support himself
and his family.  Ali made this career move in the expectation
that he would become a resident at NYMC and in reliance on his
conversations with Sharma.

At the time he joined NYMC, Ali understood that Dr.
Thaddeus Wandel, the Resident Training Program Director at NYMC,
had the authority to promise Ali a residency position.  Ali also
understood that Wandel told Sharma that Ali would receive a
residency position if he performed "good research" for NYMC.
Ali published eight scholarly papers and two chapters in
textbooks, drafted two grant proposals, and lectured students in
ophthalmology while he was at NYMC.  On several occasions,
Wandel told Ali that he was "doing a great job" and that Wandel
would secure a residency position for him.

Ali first applied for a residency position at NYMC in fall 2015.  Ali applied for this position outside of the formal "Match" application process.[1]  He did not receive the position.

Sometime before or around fall 2016, Wandel "jokingly questioned [Ali's] ability to wake up in the middle of the night if he were a resident."  Wandel also stated to Sharma that Ali looked older than he really was.

With the encouragement of Wandel, Ali applied for a second time for a residency position at NYMC in November 2016 through the Match process.  Two residency slots beginning in July 2018 were to be filled through the Match.  While NYMC invited Ali to interview for a residency position as part of the Match process, he was not chosen for either of the two Match slots.

In December 2016, Wandel instructed Ali to complete the United States Medical Licensing Examination ("USMLE") as soon as possible, as Ali may be able to obtain a residency position sooner than July 2018.  Any candidate seeking to practice medicine in the United States, including as part of a residency, must complete the USMLE.  The USMLE is taken in three separate examinations or steps.  NYMC Policy states that "[a]ll residents

---

[1] To obtain a residency position, applicants can apply to institutions through a formal process called the "Match," or they can apply informally outside of the Match process.

. . . in NYMC sponsored GME programs must pass Step 3 of the
USMLE by the completion of the second year of their NYMC
[residency] program."[2]

Ali had already passed steps 1 and 2 of the USMLE in 1998
while he was in Egypt, albeit with low scores.  With Wandel's
encouragement, Ali took step 3 of the USMLE in April 2017, but
he did not pass.  Ali passed step 3 of the USMLE in April 2018.

A third resident was chosen in 2018, but outside the Match
process.  Dr. Kelly Hutcheson, who was the new Director of
Ophthalmology at WMC and Chair of Ophthalmology at NYMC, chose
Dr. Sameer Al-Shweiki as the new resident.  Al-Shweiki, who is
younger than Ali, is Jordanian and attended medical school in
Jordan.  Al-Shweiki had achieved high scores on steps 1 and 2 of
the USMLE, and he had already passed step 3.  Hutcheson had
worked with and recruited Al-Shweiki.

On July 20, 2018, Ali met with Dr. Fredrick Bierman,[3]
Hutcheson, and Wandel to discuss his failure to obtain an

---

[2] WMC requires "every WMC residency program . . . have a policy
that stipulates a deadline by which its residents must take
and/or pass the USMLE . . . step 3 exam and that policy must be
consistent with WMC and New York Medical College . . . policy."
Specific programs "may require that [step 3] be passed at any
time, but not later [then] the end of [the] second year of
residency training."

[3] Dr. Bierman is the Director of Graduate Medical Education at
WMC and Designated Institutional Official for WMC's sponsoring
institution for the ACGME.

appointment as a resident.  Among other things discussed at the meeting, Bierman explained that as an International Medical Graduate ("IMG") Ali had to have passed USMLE step 3 before he could enter a residency program at NYMC.  This statement, which is recorded in the minutes of the meeting, was inconsistent with the written requirements of WMC and NYMC.

On September 6, 2019, Ali filed a complaint alleging that the defendants discriminated against him based on his national origin and age, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq., ("Title II") and the New York State Human Rights Law, N.Y. Executive Law § 290 et seq., ("NYSHRL").  The parties completed discovery in October 2020. On October 30, the defendants moved for summary judgment on each of Ali's claims.  The motion became fully submitted on December 23, 2020.

## Discussion

A motion for summary judgment may not be granted unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  A fact is material if it might affect the outcome of the suit under the governing law."  Frost v. New York City Police

Dep't, 980 F.3d 231, 242 (2d Cir. 2020) (citation omitted).  In making this determination, the court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences and resolv[es] all ambiguities in its favor."  Jaffer v. Hirji, 887 F.3d 111, 114 (2d Cir. 2018) (citation omitted).

"Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  Robinson v. Concentra Health Servs., Inc., 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The nonmoving party may rely neither "on conclusory statements", CIT Bank N.A. v. Schiffman, 948 F.3d 529, 532 (2d Cir. 2020) (citation omitted), nor on "mere speculation or conjecture as to the true nature of the facts."  Fed. Trade Comm'n v. Moses, 913 F.3d 297, 305 (2d Cir. 2019) (citation omitted).

The Second Circuit has "long recognized the need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent."  Walsh v. New York City Hous. Auth., 828 F.3d 70, 74 (2d Cir. 2016) (citation omitted).  Nonetheless, "[e]ven in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for

summary judgment." Delaney v. Bank of Am. Corp., 766 F.3d 163, 170 (2d Cir. 2014) (citation omitted).

Title VII makes it unlawful for an employer to "fail or refuse to hire . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2. The NYSHRL makes it unlawful to refuse to hire or employ an individual because of an individual's age or national origin.[4] N.Y. Exec. Law § 296 (McKinney). Title VII claims are evaluated under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Lenzi v. Systemax, Inc., 944 F.3d 97, 107 (2d Cir. 2019). The same framework generally applies to NYSHRL claims. Lenzi, 944 F.3d at 108 n.7.

First, the plaintiff must establish "a prima facie case of . . . discrimination by demonstrating that (1) he was within the protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." Menaker v. Hofstra Univ., 935 F.3d 20, 30 (2d Cir. 2019) (citation omitted). A "plaintiff's burden of

---

[4] Ali does not bring claims under the Age Discrimination in Employment Act of 1967. Thus, his claim of age discrimination is evaluated under the NYSHRL.

establishing a <u>prima facie</u> case in a discrimination suit
is <u>de minimis</u>." <u>Green v. Town of E. Haven</u>, 952 F.3d 394, 404
(2d. Cir. 2020) (citation omitted). <u>See also</u> <u>Chiara v. Town of
New Castle</u>, 2 N.Y.S.3d 132, 120 (2nd Dept. 2015).

At the same time, "stray remarks, even if made by a
decisionmaker, do not constitute sufficient evidence to make out
a case of employment discrimination." <u>Danzer v. Norden Sys.,
Inc.</u>, 151 F.3d 50, 56 (2d Cir. 1998). <u>See also</u> <u>Lenzi</u>, 944 F.3d
at 112; <u>Mete v. New York State Office of Mental Retardation &
Developmental Disabilities</u>, 800 N.Y.S.2d 161, 166 (1st Dept.
2005). "[O]ther indicia of discrimination" must be "properly
presented" for the claim to survive summary judgment. <u>Danzer</u>,
151 F.3d at 56.

The Second Circuit has described the standards by which
district courts are to determine whether remarks are "stray,"
rather than indicative of discriminatory intent, as follows:

> The more remote and oblique the remarks are in relation to
> the employer's adverse action, the less they prove that the
> action was motivated by discrimination.  The more a remark
> evinces a discriminatory state of mind, and the closer the
> remark's relation to the allegedly discriminatory behavior,
> the more probative the remark will be.

<u>Henry v. Wyeth Pharm., Inc.</u>, 616 F.3d 134, 149 (2d Cir. 2010)
(citation omitted). <u>See also</u> <u>Tolbert v. Smith</u>, 790 F.3d 427,
437 (2d Cir. 2015). Thus, courts consider four factors to
determine whether a remark is probative:

> (1) who made the remark (i.e., a decision-maker, a
> supervisor, or a low-level co-worker); (2) when the remark
> was made in relation to the employment decision at issue;
> (3) the content of the remark (i.e., whether a reasonable
> juror could view the remark as discriminatory); and (4) the
> context in which the remark was made (i.e., whether it was
> related to the decision-making process).

Lenzi, 944 F.3d at 112.  See also Chiara, 2 N.Y.S.3d at 142

(applying test to NYSHRL claims).  "No single factor is

dispositive."  Lenzi, 944 F.3d at 112.

If the plaintiff establishes a prima facie case, the

"burden shifts to the employer to articulate a legitimate, non-

discriminatory reason for its policy or action."  Id. at 107

(citation omitted).  In opposing a motion for summary judgment,

if the defendant "puts forth a legitimate, non-discriminatory

justification, the presumption drops out of the analysis and the

plaintiff must establish, by a preponderance of the evidence,

that the employer's justification is a pretext for

discrimination."  Id. at 107-08.  At this final phase of the

analysis, the plaintiff "need only establish that discrimination

played a role in an adverse employment decision" and "need only

prove that the employer's stated non-discriminatory reason

was not the exclusive reason for the adverse employment action."

Naumovski v. Norris, 934 F.3d 200, 214 (2d Cir. 2019) (citation

omitted).

I.   National Origin

Summary judgment is granted as to Ali's claim of discrimination based on national origin.  Ali has not established a prima facie case of discrimination based on national origin.  Ali's evidence satisfies the first three factors of the test: he is within a protected class, has demonstrated he was qualified for a residency position, and was subject to an adverse action when he was not hired for a residency position.  But the circumstances surrounding the adverse action do not give rise to an inference of discrimination based on national origin.  Ali has offered no evidence that NYMC declined to hire him for a residency position because he is Egyptian or, more broadly, because he was born abroad.

Even if Ali had established a prima facie case of discrimination based on national origin, the defendants have articulated "legitimate, non-discriminatory reason[s]" for failing to hire Ali.  Hutcheson –- the new Director of Ophthalmology at WMC and Chair of Ophthalmology at NYMC –- had previously worked with Al-Shweiki, who received the residency position.  The evidence provided by the parties is that Hutcheson chose to hire Al-Shweiki because she knew him.  Ali concedes as much in his deposition.  Additionally, the defendants explain that Al-Shweiki received higher scores on his

USMLE tests than Ali.  This, combined with Hutcheson's previous work with Al-Shweiki, provides an ample non-discriminatory reason for hiring Al-Shweiki over Ali.  Indeed, "anti-discrimination law does not make defendants liable for doing stupid or even wicked things; it makes them liable for discriminating."  Lizardo v. Denny's, Inc., 270 F.3d 94, 104 (2d Cir. 2001) (citation omitted).  See also Melman v. Montefiore Med. Ctr., 946 N.Y.S.2d 27, 36 (1st Dept. 2012) ("A challenge to the correctness of an employer's decision does not, without more, give rise to the inference that the adverse action was due to . . . discrimination.").

The defendants having put forth non-discriminatory justifications for their actions, the burden shifts back to Ali to raise a question of fact that the defendants acted with discriminatory intent.  Lenzi, 944 F.3d at 107-08.  Ali has not done so.

Ali emphasizes one argument in opposition.  He argues that the irregularities in the selection of Al-Shweiki instead of him for the residency position in 2018 create grounds to believe that he was discriminated against because he was Egyptian.  Those irregularities principally include Bierman's requirement that Ali pass step 3 of the USMLE before the beginning of the residency, Ali's superior qualifications from his years of experience when compared to Al-Shweiki's qualifications, and the

12

questionable authority of Hutcheson to install "her hand-picked candidate". Ali argues that the fabricated requirement that IMGs pass the USMLE before their residencies is particularly strong evidence of discrimination given an email from an attorney at the ACGME stating that if NYMC "is treating IMGs and [American Medical Graduates] differently, that _may_ fall under the requirement regarding policies to prevent harassment."

The parties dispute whether NYMC actually has a policy of requiring IMGs to pass step 3 of the USMLE before entering a residency.[5] But even assuming NYMC has this requirement, such a policy is not evidence of national origin discrimination because it discriminates based upon where the applicant received a medical education, not upon the national origin of the applicant. This may violate the ACGME's policy against imposing more onerous requirements for its examinations on graduates of foreign medical schools, but it does not violate the federal or state laws forbidding discrimination in employment. Graduation from a foreign medical school does not create a class of persons protected by Title VII or the NYSHRL.

The other irregularities in the appointment process to which Ali points fare no better. Whether Hutcheson should have

---

[5] Minutes from a meeting of July 20, 2018 indicate that Bierman told Ali that passing Step 3 was a requirement for IMGs being appointed to a residency position at NYMC. In making this motion, the defendants dispute that NYMC has such a requirement.

had the power to make the appointment or not, it is undisputed that she did make it.  And whether Ali is more qualified than Al-Shweiki for the position of resident when experience and certain other qualities are considered is not the test.  The issue is whether Ali has presented sufficient evidence to raise a question of fact that the selection of Al-Shweiki for the residency instead of Ali was made, at least in part, because of intentional discrimination against Ali due to his national origin.  Ali has failed to provide such evidence.

II.  Age

Summary judgment is also granted to defendants on Ali's claim of age discrimination under the NYSHRL.  Ali's claim of age discrimination principally rests on two comments made by Wandel in the fall of 2016.  These two comments are in the nature of statements that the law describes as stray remarks. Applying the standards set forth above, they do not establish a prima facie case of discrimination.

While the comments were made by a person in authority, they were made well over a year before the residency at issue began. See Chiara v. Town of New Castle, 2 N.Y.S.3d 132, 142 (2nd Dept. 2015) (plaintiff must show a nexus between the discriminatory remarks and the adverse employment action).  Indeed, at the time the 2018 residency position was filled, Hutcheson had become the primary decisionmaker and hired someone she knew.  There are no

allegations that Hutcheson made discriminatory comments about Ali or had been urged by Wandel to appoint someone other than Ali.  Cf. Breitstein v. Michael C. Fina Co., 68 N.Y.S.3d 41, 43 (1st Dept. 2017) (numerous derogatory comments constituted stray remarks and were not probative of discrimination because the comments were made by plaintiff's supervisor, not the decisionmaker who ultimately terminated his employment).  Additionally, as Ali admits, around the time he made his comments, Wandel was supportive and encouraged Ali to apply to NYMC's residency program.  See Moon v. Clear Channel Commc'ns, Inc., 763 N.Y.S.2d 157, 161 (3rd Dept. 2003) (two comments about plaintiffs' age that were related to plaintiff's ultimate termination of employment constituted stray remarks); Almanzar v. Collegiate Church Corp., 681 N.Y.S.2d 240, 241 (1st Dept. 1998) (supervisor's comment that the supervisor was "going to try to get somebody younger to work that job" was "merely an isolated and ambiguous statement insufficient to support a finding of age discrimination").

But, as explained, even if Ali has established a prima facie case of age discrimination, the defendants have presented non-discriminatory reasons for their decision to hire Al-Shweiki as a resident.  Ali has not demonstrated that these reasons were pretextual or presented sufficient evidence to raise a question

of fact that the failure to appoint Ali to a residency was due at least in part to his age.

## Conclusion

The defendants' October 30, 2020 motion for summary judgment is granted.  The Clerk of Court shall enter judgment for the defendants and close the case.


Dated:     New York, New York
           March 17, 2021



_____
                DENISE COTE
        United States District Judge